IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | Civil Action No._____ |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CATHOLIC RELIEF SERVICES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MOTION TO PROCEED PSEUDONYMOUSLY

John Doe, by and through his undersigned representatives, respectfully requests this Court to permit Mr. Doe to file his civil complaint, attached herein as Exhibit 1, and pursue legal action under the pseudonym John Doe. As explained below, allowing Mr. Doe to proceed under a pseudonym would protect against the potential retaliation and harm from Defendant Catholic Relief Services ("CRS") and the public generally, and doing so would not be unfair to CRS nor would it run averse to the public's interest.

**I.  BACKGROUND**

After a successful interview, CRS offered Mr. Doe, who is a gay male in a legally recognized marriage, a full-time position in mid-2016. Ex. 1 ¶¶ 13, 17. A part of the employment benefits associated with that offer included health insurance. *Id.* ¶ 14. CRS's health insurance coverage includes coverage for dependents, including spouses. *Id.* ¶¶ 15–16. Upon inquiry, CRS informed Mr. Doe that his husband would receive spousal coverage, as "[a]ll dependents are covered" under its insurance plan. *Id.* ¶¶ 16, 18. Mr. Doe accepted the position, and he and his husband relocated to Baltimore, Maryland. *Id.* ¶ 19.

1

As a part of his onboarding process, Mr. Doe received more detailed information related to CRS's health benefits, which included a section entitled, "Obtaining Coverage for Dependents." *Id.* ¶ 21. Nowhere in this information was an exception listed for same-sex spouses. *Id.* Additionally, CRS staff reiterated that all dependents would be covered. *Id.* ¶ 22. Based on this information, Mr. Doe enrolled himself and his husband for health coverage, and they were both covered by CRS's Benefit Plan for approximately 16 months. *Id.* ¶¶ 22–23.

In or around late 2016, however, CRS informed Mr. Doe his husband's coverage would likely be terminated because CRS does not extend its health benefits to same-sex spouses. *Id.* ¶¶ 25–27. In response to Mr. Doe's inquiries about the change in policy, a CRS official informed him that "some people who oversee CRS" wanted him terminated, and that, if Mr. Doe chose to "push the issue, doing so would hurt [Mr. Doe]." *Id.* ¶ 31. Ultimately, CRS terminated Mr. Doe's spousal insurance on October 1, 2017, and Mr. Doe's husband was forced to obtain outside health insurance that was more expensive than his coverage under CRS's insurance. *Id.* ¶¶ 43–44. To date, the only basis for this termination provided to Mr. Doe was the fact that his spouse was a man rather than a woman. *Id.* ¶ 41.

## II.    LEGAL STANDARD

"[T]he general presumption of openness of judicial proceedings applies to party anonymity as a limited form of closure . . . it operates only as a presumption and not as an absolute[.]" *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (internal citation omitted). Indeed, "[f]ederal courts traditionally have recognized that in some cases the general presumption of open trial—including identification of parties . . . by their real names—should yield in deference to sufficiently pressing needs for party . . . anonymity." *Id*. at 242.

To decide when this presumption is overcome, a court considers "the public's interest in open judicial proceedings." *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). In *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993), the Fourth Circuit identified the following five non-exhaustive factors for consideration: (1) "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature"; (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties"; (3) "the ages of the persons whose privacy interests are sought to be protected"; (4) "whether the action is against a governmental or private party"; and (5) "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *See also Doe*, 749 F.3d at 273.

### III.  ANALYSIS

The relevant *James* factors militate in favor of permitting Mr. Doe to proceed pseudonymously.[1] First, the public's interest in Mr. Doe's identity is minimal. While the public's interest is "especially compelling" when a pseudonymous plaintiff sues a public agency, *Doe*, 749 F.3d at 274, CRS is a private party. Transparency in this matter would not be inhibited by permitting Mr. Doe to proceed anonymously, as the facts underlying the issues Mr. Doe litigates—*i.e.*, being denied health benefits solely for being gay and subsequently being retaliated against for pursuing legal recourse—would remain open and available to the public. The only aspect of Mr.

---

[1] "Not all of these factors may be relevant to a given case, and there may be others that are." *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016) (citing *James*, 6 F.3d at 238). Here, though Mr. Doe is an adult male, *see Alger*, 317 F.R.D. at 40–41, all other factors weigh in favor of permitting him to proceed anonymously.

Doe's identity that is imperative to the issues in this matter, and the public's interest in those issues, is the fact that he is in a legally recognized same-sex marriage.

Further, unlike the public's interest in transparency, Mr. Doe's interest in anonymity is strong. Mr. Doe's spousal benefits were terminated solely because he is gay and is married to a man. Courts in the Fourth Circuit widely recognize that sexual orientation and same-sex relationships are precisely the "matter[s] of sensitive . . . nature" covered by the first factor. *James*, 6 F.3d at 238; *see, e.g.*, *Senior Execs. Ass'n v. United States*, No. 8:12-CV-02297-AW, 2012 WL 6109108, at *2 (D. Md. Dec. 7, 2012); *E.E.O.C. v. Spoa, LLC*, No. CIV. CCB-13-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013); *Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004) ("[T]ypes of personal intimate information justifying anonymity for litigating parties have typically involved such intimate personal matters . . . homosexuality."); *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 808 (E.D. Va. 2012). Mr. Doe is fearful—and rightly so—of not only retaliation from CRS should his identity be revealed, but of dangerous public retaliation as well. Disseminating Mr. Doe and his husband's personal information could put their livelihoods in danger, which should outweigh any need for the public to know their identities.

Moreover, shielding Mr. Doe and his spouse from retaliatory harms favors permitting Mr. Doe to proceed pseudonymously. Mr. Doe alleges that CRS has already told him "if he chose to 'push the issue [of his health coverage] doing so would hurt [him]'" at CRS. *Id.* ¶ 31. Prospective future employers may have similar reactions. As this Court has affirmed, in the internet era "docket filings are likely to remain pervasively available." *Spoa, LLC*, No. CIV. CCB-13-1615, at *3. Parties who proceed under their own name "may face psychological harm from having [a] sensitive experience made permanently available to anyone with Internet access." *Id*. As mentioned above, this risk of mental harm is especially severe here. Mr. Doe fears that potential future employers

4

may learn his identity and discriminate against him, and these fears are not based on mere speculation. Indeed, CRS warned Mr. Doe that an "employer would not want to continue paying [an] employee" who "raise[s] a lawsuit." Ex. 1 ¶ 36.

Beyond concerns surrounding his current and future employment, Mr. Doe has serious fears of both physical and mental harm, not only from CRS, but from the public as well. Several third-party organizations, such as LifeSiteNews and the Lepanto Institute, have a history of targeting members of the LGBTQ community, which has oftentimes led to individuals being harassed and forced to quit their jobs. For example, in 2018, then-Bishop Aaron Bianco out of San Diego was forced to resign from St. John the Evangelist Catholic Church because organizations such as LifeSiteNews began harassing him, including "slash[ing] tires, death threats, attacks outside Mass[.]"[2] That harassment quickly escalated and resulted in "assailants [breaking] into the office/rectory of St. John the Evangelical Parish and spray-paint[ing] 'no fags' on the conference room wall."[3] In 2015, Rick Estridge, then serving as a CRS senior executive, was forced to resign after the Lepanto Institute publicized information about his same-sex marriage and CRS failed to support him.[4] Unfortunately, these are only but a few of the numerous examples of the harmful, substantive harassment inflicted upon individuals by these organizations *solely* because of these individuals are gay.[5]

---

[2] *San Diego gay church worker resigns after months of harassment*, National Catholic Reporter, https://www.ncronline.org/news/parish/san-diego-gay-church-worker-resigns-after-months-harassment (Oct. 19, 2018) (last visited on June 11, 2020).

[3] *Id.* (internal quotation marks omitted).

[4] *Tell Catholic Relief Services Not to Discriminate Against Gay Employees*, New Ways Ministry, https://www.newwaysministry.org/2015/05/01/tell-catholic-relief-services-not-to-discriminate-against-gay-employee/ (May 1, 2015) (last visited on June 11, 2020)

[5] *See Employees of Catholic Institutions Who Have Been Fired, Forced to Resign, Had Offers Rescinded, or Had Their Jobs Threatened Because of LGBT Issues*, New Ways Ministry, https://www.newwaysministry.org/issues/employment/employment-disputes/ (last updated June

Lastly, although CRS is a private employer, there is no risk of unfairness. CRS will be able to readily identify Mr. Doe, and CRS cannot point to any reason as to why Mr. Doe's proceeding anonymously would result in unfairness. *See Spoa, LLC*, No. CIV. CCB-13-1615, at *3.

## IV.     CONCLUSION

For the foregoing reasons, Mr. Doe respectfully requests that this Court grant his Motion and allow him to proceed under the pseudonym "John Doe."

Dated: June 12, 2020                                             Respectfully submitted,

/s/ Eve L. Hill
/s/ Regina Kline
/s/ Anthony J. May
Eve L. Hill, Esq.
Regina Kline, Esq.
Anthony J. May, Esq.
Brown Goldstein Levy LLP
120 E. Baltimore St, Suite 1700
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
EHill@browngold.com
RKline@browngold.com
AMay@browngold.com


/s/ Shannon C. Leary
Shannon C. Leary, Esq.
Gilbert Employment Law, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, MD 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Sleary-efile@gelawyer.com

*Attorneys for Plaintiff*

---

2, 2020) (last visited June 11, 2020) (listing names of people who have been fired, forced to resign, had jobs rescinded, or had jobs threatened because of LGBTQ issues).

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **Motion to Proceed Pseudonymously** was served on the following on this 12th day of June, 2020, by the following method(s):

<u>Defendant's Representative</u>
Robert Augustine Twele, Esq.
Catholic Relief Services – World HQ
228 W. Lexington St.
Baltimore, MD 21201
*Served by email to: Robert.Twele@crs.org

<u>Plaintiff</u>
John Doe, by email only

/s/ Daniel Binder

Daniel Binder
Litigation Docket Manager
Gilbert Employment Law, P.C.
1100 Wayne Ave, Ste. 900
Silver Spring, MD 20910
Tel: (301) 608-0880
Fax: (301) 608-0881