## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN DOE, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No.  CCB-20-1815 |
| | * | |
| CATHOLIC RELIEF SERVICES, | * | |
| | * | |
| Defendant | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT'S</u>
## <u>MOTION TO DISMISS COUNTS I–VII</u>

709391

# **TABLE OF CONTENTS**

Page

Introduction ................................................................................................... 1

Factual Allegations ......................................................................................... 3

Standard of Review ......................................................................................... 7

Argument ......................................................................................................... 8

I.  Count V Should Be Dismissed: Catholic Relief Services
    Could Not, as a Matter of Law, Breach Any Contract with
    Plaintiff, an At-Will Employee, by Prospectively
    Terminating His Spousal Health Benefits ............................................. 8

II.  Counts VI–VII Should Be Dismissed: These Untimely
     Claims Are Based on the Untenable (and Unalleged)
     Proposition That Plaintiff, an At-Will Employee, Relied on
     a Promise of Perpetual Spousal Health Benefits ............................... 11

III.  Count IV Should Be Dismissed: Catholic Relief Services
      Did Not Violate the Wage Payment and Collection Law
      Because There Is No Plausible Allegation That Plaintiff
      Was Due a Wage that He Had Been Promised. .................................. 18

IV.  Counts I–III Should Be Dismissed: Plaintiff Fails to Plead a
     Cause of Action Under Either the Maryland Fair
     Employment Practices Act or the Maryland Equal Pay for
     Equal Work Act ................................................................................... 24

     A.  Counts II and III Should Be Dismissed: Maryland's
         Employment Statutes Distinguish Between "Sex"
         and "Sexual Orientation," but the Disparate
         Treatment Plaintiff Alleges Relates Only to His
         Sexual Orientation. ..................................................................... 26

B.     Count I Should Be Dismissed: Catholic Relief Services Is a Religious Entity, and Plaintiff Performs Work "Connected with the Activities of the Religious Entity," So His Sexual Orientation Discrimination Claim Is Barred.....................................................32

Conclusion .....................................................................................................35

709391

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AthenaHealth, Inc. v. May,*
  290 F. Supp. 3d 108 (D. Mass. 2018) .................................................................... 14

*Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.,*
  No. ELH-18-3918, 2020 WL 1063060 (D. Md. Mar. 5, 2020) ............................... 23

*Blis Day Spa, LLC v. Hartford Ins. Grp.,*
  427 F. Supp. 2d 621 (W.D.N.C. 2006) ................................................................... 24

*Bostock v. Clayton County,*
  140 S. Ct. 1731 (2020) ............................................................................. 2, 27, 28, 29

*Castellano v. Brigham Young Univ.,*
  No. 2:16-cv-01205-JNP-EJF, 2018 WL 4271039 (D. Utah Aug. 16,
  2018) ....................................................................................................................... 34

*Catalyst Health Sols., Inc. v. Magill,*
  414 Md. 457 (2010) ................................................................................................. 20

*Clark v. Sunipa II Inc.,*
  No. 8:10-cv-02027-AW, 2011 WL 5439000 (D. Md. Nov. 8, 2011) ...................... 35

*Clemans v. Nat'l Staffing Sols,. Inc.,*
  No. 5:18-cv-481-JMH-MAS, 2020 WL 1987266 (E.D. Ky. Apr. 27,
  2020) ....................................................................................................................... 14

*Cunningham v. Feinberg,*
  441 Md. 310 (2015) ................................................................................................. 19

*Eichelberger v. Sinclair Broadcasting Grp., Inc.,*
  No. L-08-77, 2009 WL 2229309 (D. Md. July 21, 2009) ........................................ 17

*FCC v. Beach Commc'ns, Inc.,*
  508 U.S. 307 (1993) ................................................................................................. 31

iii

*Grant v. Isec, Inc.,*
    No. RDB 08-2791, 2010 WL 1569856 (D. Md. Apr. 19, 2010) .............................. 22

*Grillo v. Lucent Techs., Inc.,*
    No. L-04-2790, 2005 WL 8174562 (D. Md. Jan. 11, 2005) .................................... 13

*Grimes v. Dunnigan,*
    No. CCB-13-935, 2013 WL 3353739 (D. Md. July 2, 2013) .................................... 8

*Gwinn v. Food Lion, LLC,*
    195 F. Supp. 2d 728 (D. Md. 2002) .......................................................... 8

*Horn v. Azusa Pac. Univ.,*
    No. 2:18-cv-09948-CAS-PLAx, 2019 WL 1557445 (C.D. Cal. Apr. 9,
    2019) ........................................................................................ 34

*JTH Tax, Inc. v. Aime,*
    744 F. App'x 787 (4th Cir. 2018) ............................................................. 9

*King v. Warner Pac. Coll.,*
    437 P.3d 1172 (Or. Ct. App. 2019) ......................................................... 35

*Knodel v. Providence Health & Servs.,*
    No. C10-5292BHS, 2011 WL 3563912 (W.D. Wash. Aug. 15, 2011) .................... 34

*Lloyd v. Gen. Motors Corp.,*
    397 Md. 108 (2007) ......................................................................... 16

*Mackie v. Jewish Found. for Grp. Homes,*
    No. DKC 10-0952, 2011 WL 1770043 (D. Md. May 9, 2011) ............................ 16

*Macsherry v. Sparrows Point, LLC,*
    No. ELH-15-22, 2017 WL 3315262 (D. Md. Aug. 3, 2017) ................................ 21

*Markey v. Wells Fargo Bank, N.A.,*
    No. PWG-18-1867, 2019 WL 1282075 (D. Md. Mar. 20, 2019) ........................... 12

*Marrs v. Marriott Corp.,*
    830 F. Supp. 274 (D. Md. 1992) ............................................................. 17

iv

*Mayne v. Dennis Stubbs Plumbing, Inc.*,
    No. RDB 05-774, 2006 WL 1997398 (D. Md. July 13, 2006) ...................................... 3

*McDermott v. Nat'l Shipping Co.*, No. CCB-99-3080, 2000 WL 218377
    (D. Md. Jan. 24, 2000) ................................................................................................ 14

*McNierney v. McGraw-Hill, Inc.*,
    919 F. Supp. 853 (D. Md. Nov. 7, 1995) ................................................................... 17

*Monroe v. City of Charlottesville*,
    579 F.3d 380 (4th Cir. 2009) ........................................................................................ 8

*Newton v. Kenific Grp.*,
    62 F. Supp. 3d 439 (D. Md. Oct. 2014) ............................................................... 13, 14

*Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*,
    No. DKC 2005-2882, 2006 WL 2572474 (D. Md. Sept. 5, 2006) ............................ 15

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020) ................................................................................................ 34

*Parrish v. Tile Shop, LLC*,
    No. JKB-16-1177, 2016 WL 8669919 (D. Md. Sept. 30, 2016) ............................... 28

*Pearson v. John Hancock Mut. Life Ins. Co.*,
    979 F.2d 254 (1st Cir. 1992) ....................................................................................... 24

*Raines v. Am. Fed'n of Teachers—Md. Prof'l Emps. Council*,
    No. ADC-19-1266, 2019 WL 4467132 (D. Md. Sept. 18, 2019) .............................. 31

*Rosedale v. CarChex, LLC*,
    No. SAG-19-2780, 2020 WL 998740 (D. Md. Mar. 2, 2020) ................................... 15

*Sankoh v. Gold Street Capital Fund*,
    No. PX 17-2276, 2018 WL 1709115 (D. Md. Apr. 9, 2018) ..................................... 21

*Sarkissian v. Vaticor, Inc.*,
    No. AW-04-995, 2005 WL 8174720 (D. Md. Nov. 29, 2005) .................................... 9

*Schilling v. Schmidt Baking Co.*,
    876 F.3d 596 (4th Cir. 2017) ...................................................................................... 23

709391

*Singhal & Co. v. VersaTech, Inc.*,
   No. JKB-19-01209, 2019 WL 4120434 (D. Md. Aug. 28, 2019) ............................ 6

*Smallwood v. Nationstar Mortg., LLC*,
   No. PX-16-4008, 2017 WL 6527251 (D. Md. Dec. 21, 2017) ................................ 12

*Spacesaver Sys., Inc. v. Adam*,
   440 Md. 1 (2014)........................................................................................ 8

*Tarquini v. Superior Prods., Inc.*,
   No. JKB-05-3292, 2007 WL 763186 (D. Md. Mar. 12, 2017) .................................. 9

*Teamsters Local No. 355 v. Sysco Balt., LLC*,
   No. CCB-18-1410, 2019 WL 2290523 (D. Md. May 29, 2019)............................ 7, 8

*Varghese v. Honeywell Int'l, Inc.*,
   424 F.3d 411 (4th Cir. 2005) ....................................................................... 20

*Whiting-Turner Contracting Co. v. Fitzpatrick*,
   366 Md. 295 (2001)................................................................................... 19

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ............................................................ 6, 12

Md. Code Ann., Lab. & Empl. § 3-301 ..................................................................... 30

Md. Code Ann., Lab. & Empl. § 3-304 ..................................................................... 30

Md. Code Ann., Lab. & Empl. § 3-501 ................................................................ *passim*

Md. Code Ann., State Gov't § 20-604 ................................................................. *passim*

Md. Code Ann., State Gov't § 20-606 ...................................................................... 28

2016 Md. Laws, ch. 556 ......................................................................................... 30

**Rules**

Federal Rule of Civil Procedure 9 ........................................................................... 15

Federal Rule of Civil Procedure 12 ....................................................................... 6, 7

vi

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ....................................................................... 27

709391

## Introduction

Defendant Catholic Relief Services—United States Conference of Catholic Bishops ("Catholic Relief Services"), by undersigned counsel, respectfully files this Memorandum in Support of Defendant's Motion to Dismiss Counts I–VII of Plaintiff's Complaint, ECF No. 1.

Plaintiff is an employee of Catholic Relief Services.  This lawsuit involves a dispute over whether Catholic Relief Services should be forced to provide health care benefits to Plaintiff's same-sex spouse contrary to its religious beliefs. Plaintiff acknowledges that Catholic Relief Services terminated such benefits in accordance with its need to follow the teachings of the Catholic Church.  Compl. ¶ 39 (Catholic Relief Services informs Plaintiff: "Following the Catholic Church's definition of marriage, we cannot offer benefits to unmarried domestic partners, nor to same-sex spouses.").  Catholic Relief Services had provided benefits to Plaintiff for the first sixteen months of Plaintiff's employment because of erroneous statements by a Catholic Relief Services recruiter.  However, Catholic Relief Services gave Plaintiff notice long in advance that such benefits would end because of the teachings of the Catholic Church.  After that advance notice, the benefits for Plaintiff's same-sex spouse were discontinued.

709391

Ultimately, this case will require the Court to decide a question left open by the Supreme Court of the United States in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)—namely, whether the Religious Freedom Restoration Act of 1993, or RFRA, permits a religious institution like Catholic Relief Services to take employment actions in the sincere exercise of its religious faith that might otherwise run afoul of federal employment law.  But apart from his federal claims that implicate that unresolved question, Plaintiff pleads seven state law counts that the Court should dismiss at the outset:  two of those counts (Counts VI and VII) are untimely, and all are without legal basis.

Because Plaintiff is an at-will employee, Catholic Relief Services may prospectively change the compensation and benefits it provides to Plaintiff without any contract, tort, or wage payment liability.  This basic legal concept requires the dismissal of Counts IV–VII.  Further, because this case involves alleged "sexual orientation" discrimination, and because Maryland employment statutes categorize "sexual orientation" separately from "sex," Plaintiff's claims of discrimination (Count II) and wage inequality (Count III) on the basis of "sex" must fail.  Finally, religious employers such as ***Catholic*** Relief Services are

709391

expressly exempt from the sexual orientation provisions of Maryland's

anti-discrimination statute, so Count I also fails.

## Factual Allegations

Though Catholic Relief Services disagrees with many of the assertions and

characterizations in Plaintiff's Complaint, strictly for purposes of this Motion,

Catholic Relief Services assumes the truth of Plaintiff's well-pleaded factual

allegations (but not his characterizations or legal conclusions, which are entitled

to no presumption of truth or deference even at the pleading stage). *See Mayne v.*

*Dennis Stubbs Plumbing, Inc.*, No. RDB 05-774, 2006 WL 1997398, at *2 (D. Md.

July 13, 2006) ("[I]n considering a motion to dismiss, the court 'need not accept as

true unwarranted inferences, unreasonable conclusions, or arguments' nor 'the

legal conclusions drawn from the facts.'" (quoting *E. Shore Mkts., Inc. v. J.D.*

*Assocs. LP*, 213 F.3d 175, 180 (4th Cir. 2000)).

Plaintiff is a "gay, cisgender male" employed as an IT professional at

Catholic Relief Services.  Compl. ¶¶ 7, 13.  He is a "married gay man in a legally

recognized same-sex marriage."  *Id.* ¶ 17.  According to Plaintiff, when he was

recruited for employment with Catholic Relief Services in mid-2016, he had

asked the recruiter whether his husband would be covered by the employer's

709391

health benefits, and the "recruiter responded, 'All dependents are covered.'"  *Id.*

¶ 18.  Plaintiff alleges that Catholic Relief Services personnel reiterated during

his onboarding that "all dependents would be covered under the CRS-sponsored

health insurance," and he proceeded to apply for health benefits for himself and

his spouse.  *Id.* ¶ 22.  Plaintiff does not allege that he entered into an employment

contract with Catholic Relief Services for any specified term.

Catholic Relief Services initially provided spousal health benefits for

Plaintiff, but in November 2016 Catholic Relief Services informed Plaintiff that

the benefits had been provided by mistake and that health benefits for same-sex

spouses are not available under Catholic Relief Services' insurance plan.  *Id.*

¶¶ 25-26.  Although Catholic Relief Services informed Plaintiff that his spousal

health benefits would terminate by the end of the month, *id.* ¶ 27, Plaintiff

continued to receive those benefits for ten additional months until October 1,

2017, *id.* ¶ 43.  In advance of the coverage termination date, Catholic Relief

Services provided Plaintiff with a Summary of Employee Benefits brochure that

explains that "Employees may enroll eligible dependents through proof of

relationship.  Following the Catholic Church's definition of marriage, we cannot

offer benefits to unmarried domestic partners, nor to same-sex spouses[.]"

709391

Compl. Ex. 2 at 2.  According to Plaintiff, because of the termination of these benefits in which he had been mistakenly enrolled, he was "forced to secure alternative insurance coverage at rates higher than those afforded under CRS's plan," and his spouse had to delay certain dental procedures.  Compl. ¶ 44.

Plaintiff brought a charge of discrimination before the EEOC on June 1, 2018, and subsequently brought this action on June 12, 2020, after receiving a right to sue letter from the EEOC.  Plaintiff alleges that Catholic Relief Services' termination of spousal health benefits that are incompatible with Catholic teachings constitutes sexual orientation discrimination and sex discrimination in violation of the Maryland Fair Employment Practices Act (Counts I–II); sex discrimination in violation of the Maryland Equal Pay for Equal Work Act (Count III); failure to pay wages pursuant to the Maryland Wage Payment and Collection Law (Count IV); and breach of contract (Count V).  Plaintiff further alleges that he relied to his detriment on Catholic Relief Services' initial representation that he would qualify for spousal benefits (Count VI) and that this representation was made negligently (Count VII).  Finally, Plaintiff alleges sex discrimination in violation of Title VII (Count VIII) and the federal Equal Pay Act (Count IX), and retaliation in violation of state and federal law (Count X).

5

Catholic Relief Services now moves to dismiss Counts I–VII.[1]  An employer who prospectively adjusts certain aspects of compensation of an at-will employee—for any reason—does not breach its contract with the employee where the employee is on notice of the adjustment and continues to work for the employer.  Similarly, because employment is presumptively at will, an employee cannot plausibly contend that an initial offer of benefits is tantamount to a "clear and definite promise" of *perpetual* benefits, so Plaintiff's detrimental reliance claim must fail.  His negligent misrepresentation claim likewise fails:  taking the Complaint at face value, Plaintiff got exactly what was offered to him (spousal health benefits for an unspecified period of time), and he has not shown how any misstatement by agents of Catholic Relief Services could have caused him any damages.  Moreover, as both Plaintiff's detrimental reliance claim and his negligent misrepresentation claim arise from statements made in 2016, the claims are untimely under Md. Code Ann., Cts. & Jud. Proc. § 5-101.

---

[1]  Catholic Relief Services expects to answer those counts of Plaintiff's Complaint that are not dismissed within fourteen days following the Court's ruling on this Motion, pursuant to Rule 12(a)(4) of the Federal Rules of Civil Procedure.  *See Singhal & Co. v. VersaTech, Inc.*, No. JKB-19-01209, 2019 WL 4120434, at *6 n.2 (D. Md. Aug. 28, 2019) (adopting the "majority view that a partial motion to dismiss stays the time to file a responsive pleading").

709391

Plaintiff's Wage Payment and Collection Law claim also must fail, since

Catholic Relief Services prospectively adjusted his compensation while

complying with all wage and hour laws.  Since Catholic Relief Services had no

contractual obligation to provide same-sex spousal health benefits, those benefits

are not "wages" that have been "promised" to Plaintiff and were "due."  Further,

Plaintiff's discrimination claims under Maryland law are not cognizable, because

the facts as alleged would support at most a claim of sexual orientation

discrimination, but that claim is unavailable against religious entities like

Catholic Relief Services.  The Court should dismiss all these counts, which

discovery could not cure and which only distract from the real issues in the case.

## Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the "factual allegations

of a complaint 'must be enough to raise a right to relief above the speculative

level on the assumption that all the allegations in the complaint are true (even if

doubtful in fact).'"  *Teamsters Local No. 355 v. Sysco Balt., LLC*, No. CCB-18-1410,

2019 WL 2290523, at *2 (D. Md. May 29, 2019) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)).  "To satisfy this standard, a plaintiff need not 'forecast'

evidence sufficient to prove the elements of the claim.  However, the complaint

709391

must allege sufficient facts to establish those elements.'" *Id.* (citation omitted).

"Thus, the plaintiff's obligation is to set forth sufficiently the 'grounds of his

entitlement to relief,' offering more than 'labels and conclusions.'" *Grimes v.*

*Dunnigan*, No. CCB-13-935, 2013 WL 3353739, at *1 (D. Md. July 2, 2013) (quoting

*Twombly*, 550 U.S. at 555)).  While the court must accept the plaintiff's

well-pleaded factual allegations as true, it "need not accept the legal conclusions

drawn from the facts, and [] need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments." *Monroe v. City of Charlottesville*, 579

F.3d 380, 385-86 (4th Cir. 2009) (alteration in original) (citation omitted).

<u>**Argument**</u>

**I.      Count V Should Be Dismissed: Catholic Relief Services Could Not, as a
Matter of Law, Breach Any Contract with Plaintiff, an At-Will Employee,
by Prospectively Terminating His Spousal Health Benefits.**

In Count V, Plaintiff claims a breach of contract.  However, Plaintiff is an

at-will employee.  Under Maryland law, "in the absence of a contract for

employment of a definite term, an employee is considered an at-will employee."

*Gwinn v. Food Lion, LLC*, 195 F. Supp. 2d 728, 730 (D. Md. 2002); *see Spacesaver*

*Sys., Inc. v. Adam*, 440 Md. 1, 9 (2014) (referring to the "major presumption under

Maryland law that an employment relationship is presumptively at-will unless

the parties clearly and expressly set forth their agreement that the contract is to

8

last for a specific period of time").  Plaintiff was not, and he does not allege that

he was, employed at Catholic Relief Services under a contract for a definite term.

Maryland law permits an employer to change the terms of employment of

an at-will employee.  "It is, in fact, the well-established law of Maryland that an

employee hired for an indefinite period is an at-will employee and it follows

logically and has been held in some jurisdictions that the terms of an at-will

employment contract can be changed unilaterally by the employer."  *Tarquini v.*

*Superior Prods., Inc.*, No. JKB-05-3292, 2007 WL 763186, at *5 (D. Md. Mar. 12,

2017); *see also id.* ("an at-will employee continuing in employment after a change

in conditions of employment is deemed to have accepted the change"); *JTH Tax,*

*Inc. v. Aime*, 744 F. App'x 787, 793 (4th Cir. 2018) (noting the "well-recognized

rule that in the context of at-will employment, an employee's continued work

can serve as adequate consideration to make a change in the terms of her

employment (or some other promise) enforceable"); *Sarkissian v. Vaticor, Inc.*, No.

AW-04-995, 2005 WL 8174720, at *3 (D. Md. Nov. 29, 2005) (citing cases to show

that an employer's right to terminate an at-will employee "includes the right to

unilaterally modify the terms of that employee's prospective compensation").

9

Catholic Relief Services informed Plaintiff of a prospective change in his employment benefits which cannot, under Maryland law, establish a breach of contract. Catholic Relief Services, like any at-will employer, is simply not contractually obligated to continue an initial salary and benefits package in perpetuity. Whatever Catholic Relief Services may have communicated to Plaintiff at the time of his onboarding, it is undisputed that Catholic Relief Services later informed Plaintiff that his spousal health benefits would terminate. Compl. ¶ 27. Catholic Relief Services was free to make that adjustment to Plaintiff's benefits, and Plaintiff was free to accept the adjustment and continue working for Catholic Relief Services or quit. With many months' advance notice, Plaintiff chose to stay, and thus accepted the modified terms of his employment.

For Plaintiff's breach-of-contract claim to succeed, the Court would have to reject the authority cited above and conclude that an employer who once offers an employee a particular benefit is forever bound to extend that same benefit. But that obviously is not the law. Employers routinely adjust compensation and other terms and benefits of employment, whether for economic reasons or otherwise. For example, many organizations have implemented pay reductions in anticipation of the economic fallout from the COVID-19 pandemic. Employers

709391

may also change health plans or carriers, resulting in different health benefits

and different premiums and copays.  All of this is a necessary corollary to a

system that prizes freedom of contract and economic mobility.  So long as such

changes are prospective, an at-will employee has no basis to argue that the

changes amount to breach of contract.  Count V accordingly must be dismissed.

II.    **Counts VI–VII Should Be Dismissed: These Untimely Claims Are Based on the Untenable (and Unalleged) Proposition That Plaintiff, an At-Will Employee, Relied on a Promise of Perpetual Spousal Health Benefits.**

In Count VI, Plaintiff alleges that he relied to his detriment on a "clear and

definite promise to Mr. Doe that his spouse would be covered as a dependent."

Compl. ¶ 97.  In Count VII, Plaintiff alleges that "CRS negligently represented

through its employees and/or agents that Mr. Doe's spouse would be covered as

a dependent under CRS's Benefit Plan with Aetna."  *Id.* ¶ 103.  Assuming the

statements that Plaintiff attributes to Catholic Relief Services were made as he

alleges and that he relied on those statements in agreeing to move to Baltimore

and work for Catholic Relief Services, his detrimental reliance and negligent

misrepresentation claims nonetheless fail.  Catholic Relief Services followed

through on its statements and provided Plaintiff with spousal health benefits for

sixteen months, and it was free, as an at-will employer, to later adjust the terms

and benefits of Plaintiff's employment at its discretion.

11

The Court need not probe the merits of these claims, though, because the claims are untimely.  Both claims arise from statements allegedly made by employees of Catholic Relief Services in 2016.  According to Plaintiff, he was on notice as of November 2016 that spousal health benefits had been provided to him by mistake and would be terminated.  *See* Compl. ¶¶ 25-27.  Any claim relating to statements by Catholic Relief Services recruiters thus accrued no later than November 2016, which means that Plaintiff had to bring any related action no later than November 2019.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues . . . ."); *Markey v. Wells Fargo Bank, N.A.*, No. PWG-18-1867, 2019 WL 1282075, at *8 (D. Md. Mar. 20, 2019) (three-year limitations period applies to promissory estoppel); *Smallwood v. Nationstar Mortg., LLC*, No. PX-16-4008, 2017 WL 6527251, at *8 (D. Md. Dec. 21, 2017) (same, for negligent misrepresentation).  Plaintiff's Complaint filed in June 2020 was months out of time.

Even if Plaintiff could overcome the time bar on Counts VI and VII, those counts would fail as improper attempts to circumvent the at-will employment doctrine.  "Maryland courts have noted . . . that at-will employment is a 'far-reaching rule' such that 'attempts to circumvent it by relying on estoppel or

709391

similar theories have consistently met with failure.'"  *Newton v. Kenific Grp.*, 62 F.

Supp. 3d 439, 444 (D. Md. Oct. 15, 2014) (citation omitted).  That has to be the

law, because otherwise a disgruntled employee could always argue that a change

in his compensation or the circumstances of his employment differs from what

he was previously told or led to believe, and that he relied to his detriment on his

earlier understanding.  Such a rule would all but eliminate freedom of contract in

the employment context and would render the at-will doctrine meaningless.

Courts in Maryland and elsewhere have rejected attempts by employees to

recast employment contract disputes in the guise of detrimental reliance.  In

*Grillo v. Lucent Techs., Inc.*, No. L-04-2790, 2005 WL 8174562 (D. Md. Jan. 11, 2005),

for instance, then-Chief Judge Legg dismissed a detrimental reliance claim by an

employee who alleged that her "manager induced her to remain employed in her

division by promising her that she would not be terminated through a reduction

in force," a promise the manager later broke.  *Id.* at *2.  Judge Legg wrote that

"[w]hen the employment relationship is at will, allegations such as . . . that an

employee rejected another job offer based on her employer's assurances that she

will remain in her current job[] are insufficient as a matter of law to state a claim

for detrimental reliance."  *Id.* at *3; *see also, e.g., Clemans v. Nat'l Staffing Sols,. Inc.*,

13

No. 5:18-cv-481-JMH-MAS, 2020 WL 1987266, at *3 (E.D. Ky. Apr. 27, 2020) ("it is patently unreasonable to rely on a promise of future employment that can be terminated at any time"); *AthenaHealth, Inc. v. May*, 290 F. Supp. 3d 108, 112 (D. Mass. 2018) (given employee's at-will status, her employer's promise to allow her to work remotely was "too ambiguous to be enforceable under the doctrine of promissory estoppel").

An employee ***might*** have a colorable claim for detrimental reliance if the employer induced the employee to take a potentially irreversible action and then never followed through on its end of the bargain, *e.g.*, *Newton*, 62 F. Supp. 3d at 441 (plaintiff accepted defendant's purportedly "rock-solid" offer of employment and resigned from his former job, but was subsequently informed that he would not be hired). *But see McDermott v. Nat'l Shipping Co.*, No. CCB-99-3080, 2000 WL 218377, at *4 (D. Md. Jan. 24, 2000) ("Maryland courts have rejected an implied covenant of fair dealing with respect to terminating an employment at-will relationship." (citing *Suburban Hosp., Inc. v. Dwiggins*, 324 Md. 294, 309 (1991)). But that is certainly not what Plaintiff alleges here. Rather, he acknowledges that he received spousal health benefits for well over a year and that both he and his husband "received insurance cards[] and . . . used their insurance coverage at

14

various times."  Compl. ¶ 23.  Catholic Relief Services had no obligation to maintain that insurance coverage in which Plaintiff had been erroneously enrolled beyond the sixteen months for which it provided the coverage, just as it had no obligation to maintain Plaintiff's employment at all.

For the same reason that Plaintiff cannot prevail on a detrimental reliance theory, he cannot prevail on a tort theory of negligent misrepresentation.  That tort requires a plaintiff to allege, arguably with particularity,[2] that the defendant, owing a duty of care to the plaintiff, "negligently asserts a *false statement*" with the intent that the plaintiff would act upon the statement; that the defendant knew the plaintiff would "probably rely on the statement, *which, if erroneous, will cause loss or injury*"; that the "plaintiff, justifiably, takes action in reliance on the statement," and that the "plaintiff suffers *damage proximately caused* by

---

[2] Courts in this district have divided over the question whether the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to claims for negligent misrepresentation, which in many respects mirror claims for fraudulent misrepresentation but lack a scienter requirement.  *Compare Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 WL 2572474, at *20 (D. Md. Sept. 5, 2006) ("The Fourth Circuit has not ruled definitively on whether the heightened pleading standard of Fed.R.Civ.P. 9(b) applies to a negligent misrepresentation claim. However, several district courts within the Fourth Circuit . . . have applied Rule 9(b) to such claims."), *with Rosedale v. CarChex, LLC*, No. SAG-19-2780, 2020 WL 998740, at *6 n.3 (D. Md. Mar. 2, 2020) ("Claims for negligent misrepresentation are not typically subject to the heightened pleading standards in Fed. R. Civ. P. 9(b).").  The Fourth Circuit has not resolved this disagreement in a precedential opinion.

709391

the defendant's negligence." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136 (2007) (emphases added) (citations omitted).

Here, crediting all of Plaintiff's factual allegations and assuming that he relied on the statement that "Mr. Doe's spouse would be covered as a dependent under CRS's Benefit Plan with Aetna," Compl. ¶ 103, he has not alleged negligent misrepresentation. Specifically, he has not alleged that Catholic Relief Services made a false statement: he was offered benefits and he received them. The fact that a Catholic Relief Services recruiter may have been confused about the organization's policy is of no moment to Plaintiff, because he got what he was offered. Crucially, he does not allege that he was promised spousal health benefits for the duration of his employment with Catholic Relief Services or even for a specified period of time, and Plaintiff's attempt through tort law to impose a durational requirement that his employer never agreed to is just another attempt by Plaintiff to plead around the at-will employment doctrine. *Compare Mackie v. Jewish Found. for Grp. Homes*, No. DKC 10-0952, 2011 WL 1770043, at *7 (D. Md. May 9, 2011) ("[T]he general rule is that 'a representation regarding future conduct of the party making the representation, essentially a promise, is not actionable under a theory of negligent misrepresentation.'"), *with McNierney*

16

*v. McGraw-Hill, Inc.*, 919 F. Supp. 853, 860-61 (D. Md. Nov. 7, 1995) ("There is no evidence from which a fact finder could conclude that McGraw–Hill did not intend to have McNierney come to work when the statements at issue were made. The fact that, later, the intention changed is not evidence that the statement of intent was untrue when made."); *see also, e.g., Eichelberger v. Sinclair Broadcasting Grp., Inc.*, No. L-08-77, 2009 WL 2229309, at *2 (D. Md. July 21, 2009) (where at-will employee's superiors told her she could return to her position following maternity leave, employee "could not . . . have justifiably relied upon [those] statements, because the promise that she would be rehired was always subject to retraction"); *Marrs v. Marriott Corp.*, 830 F. Supp. 274, 281 (D. Md. 1992) (where at-will employer provided "all that [it] had contractually obligated itself to provide, [plaintiff's] negligent misrepresentation claims" failed).

Moreover, as with any negligence claim, damage proximately caused by the alleged misconduct is an element of the cause of action, but a close reading of the Complaint shows that Plaintiff does not plausibly allege any causally related damage. He conclusorily alleges that "as a direct and proximate result of CRS's failure to provide spousal benefits, Mr. Doe has been forced to pay for alternative health care coverage for his spouse." Compl. ¶ 107. But these alleged damages

17

709391

do not flow from the alleged statement by the recruiter but rather from the much later stoppage of spousal benefits, after Plaintiff received notice that the benefits would end.  Plaintiff does not allege any damages caused by the recruiter's statement that Plaintiff's spouse would receive benefits, nor could he since Plaintiff's spouse did receive benefits.  Taking the facts in the light most favorable to Plaintiff, he received a valuable benefit that he was not eligible to receive for well over a year, and he had plenty of notice before the benefit lapsed.

Plaintiff may have formed an expectation at the time of his onboarding that he would receive spousal benefits for the long haul, but if so, that is not an expectation that the law treats as reasonable or cognizable.  Plaintiff's untimely detrimental reliance and negligent misrepresentation claims must be dismissed.

III.   **Count IV Should Be Dismissed: Catholic Relief Services Did Not Violate the Wage Payment and Collection Law Because There Is No Plausible Allegation That Plaintiff Was Due a Wage that He Had Been Promised.**

In Count IV, Plaintiff brings a claim under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL"), which provides that an "employee may bring an action against the employer to recover [] unpaid wages."  The MWPCL defines a "wage" as "all compensation that is ***due*** to an employee for employment," including fringe benefits or other

709391

remuneration "*promised* for service." *Id*. (emphasis added).  The Maryland Court

of Appeals has repeatedly emphasized that the MWPCL provides a statutory

basis for recovering compensation that was "promised" by the employer, namely

compensation that is due under the employment contract between the employer

and employee.  The court in *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md.

295, 303-305 (2001), for instance, relied on the explicit statutory language that to

be a "wage" under the MWPCL, the subject compensation must be "promised

for service."  The Court of Appeals made clear that the MWPCL provides a cause

of action to recover wages or compensation such as bonuses and fringe benefits

only if such compensation was agreed to in advance by both parties (employer

and employee).  *Id.*  Thus, any cause of action under the MWPCL must be based

on an underlying contract for the "wage."  *Cunningham v. Feinberg*, 441 Md. 310,

325-26 (2015) ("the cause of action assumes the existence of some sort of

underlying contract").  As the Fourth Circuit put it, "[r]eading the MWP & CL

and Maryland case law on this issue, it is clear that for a form of compensation to

constitute 'wages' under the MWP & CL, and therefore be subject to the MWP &

CL enhanced damages provisions, the employee must have been *promised* the

19

particular form of compensation as remuneration for his labor." *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 418 (4th Cir. 2005).

Thus, as a matter of law, Plaintiff's MWPCL claim fails for all the same reasons that his breach of contract claim fails.  Quite simply, Plaintiff does not allege that there was any time when Catholic Relief Services promised him spousal health benefits and then did not provide them.  To the contrary, his allegations are that Catholic Relief Services promised spousal health benefits and then provided them for sixteen months.  Catholic Relief Services informed Plaintiff in advance that the spousal benefits would terminate (i.e., the organization was no longer promising the benefits to Plaintiff in exchange for his employment).  Catholic Relief Services then stopped providing the spousal benefits.  Plaintiff does not state a claim under the MWPCL because he alleges no time during which Catholic Relief Services promised benefits and failed to provide them.  *See Catalyst Health Sols., Inc. v. Magill*, 414 Md. 457, 473 (2010) ("only when wages have been promised as part of the compensation for the employment arrangement and all conditions agreed to in advance for earning those wages have been satisfied, will Section 3–505 requiring payment of wages due apply" (emphasis omitted)).

709391

Plaintiff seeks to expand the scope of the MWPCL far beyond its actual application.  Plaintiff's theory would add a claim under the MWPCL to every garden variety discrimination or employment tort claim, but this is not the proper scope of the statute.  In *Macsherry v. Sparrows Point, LLC*, No. ELH-15-22, 2017 WL 3315262 (D. Md. Aug. 3, 2017), Judge Hollander recently explained that the primary purpose of the MWPCL is to "provide a vehicle for employees to collect, and an incentive for employers to pay, back wages."  *Id.* at *30 (quoting *Medex v. McCabe*, 372 Md. 28, 39 (2002)).  "The MWPCL does not focus on 'the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment.'"  *Id.* (quoting *Friolo v. Frankel*, 373 Md. 501, 513 (2003)).

No federal or state court in Maryland has construed the MWPCL to provide a remedy for workplace discrimination, which is a distinct cause of action with distinct remedies under federal and state law.  Rather, as one might expect, the typical MWPCL case involves an employer's refusal to pay the wages it promised or miscalculation of wages due.  *E.g.*, *Sankoh v. Gold Street Capital Fund*, No. PX 17-2276, 2018 WL 1709115, at *3 (D. Md. Apr. 9, 2018) (plaintiff stated claim for violation of MWPCL where he alleged he was promised an

21

annual salary of $50,000 yet was paid just $1000 for over fifteen weeks of employment).

At least one court has rejected an attempt by a plaintiff to shoehorn a discrimination claim into the MWPCL.  In *Grant v. ISEC, Inc.*, No. RDB 08-2791, 2010 WL 1569856, at *4 (D. Md. Apr. 19, 2010), *aff'd*, 396 F. App'x 941 (4th Cir. 2010) (per curiam), Judge Bennett rejected the plaintiff's argument that his employer's "alleged discriminatory refusal to offer him overtime violated the Federal Fair Labor Standards Act . . . the Maryland Wage and Hour Law . . . and the Maryland Wage Payment and Collection Law."  Judge Bennett explained that these statutes "provide relief for overtime compensation and the payment of wages for hours actually worked."  *Id.*  The plaintiff made "no allegation that [his employer] failed to pay him the wages he was due.  Accordingly, [his] wage and hour claim [was] dismissed as a matter of law."  *Id.*  The logic underlying Judge Bennett's opinion is that the MWPCL means what it says:  it gives employees a cause of action to recover promised wages (together with statutory damages) that employers fail to pay.  It is not a cure-all for any disputes that arise in the workplace, many of which could be cast in terms of compensation by an artful pleader even if the substance of the claim has nothing to do with back pay.

Similarly, the Fourth Circuit implicitly rejected an expansion of the

MWPCL as an appendage to every federal employment statutory claim when it

affirmed the dismissal of a plaintiff's MWPCL claim even though his federal

Wage and Hour (overtime) claim survived.  *See Schilling v. Schmidt Baking Co.,*

*Inc.*, 876 F.3d 596, 603 & n.7 (4th Cir. 2017).  The MWPCL serves to require

employers to pay contractually obligated amounts to employees when those

amounts come due; it does not serve as an add-on to every statutory

employment claim that can be asserted by a plaintiff.

Absent Maryland authority that would stretch the statute beyond its plain

language to redress a discrimination claim, this Court should construe the statute

as it is written—as Maryland courts have done—and apply it in cases where a

plaintiff seeks to recover promised wages that were unjustifiably withheld or

delayed.  *See Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, No. ELH-18-3918,

2020 WL 1063060, at *11 (D. Md. Mar. 5, 2020) ("The role of a federal court when

considering an issue of state law is to apply the governing state law, or, if

necessary, predict how the state's highest court would rule on an unsettled

issue." (citations and internal quotation marks omitted)).  "Interests of comity

warrant caution on the part of the federal courts in announcing what state law is;

23

federal courts should be wary of expanding the boundaries of established state jurisprudence." *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 637-38 (W.D.N.C. 2006); *see Pearson v. John Hancock Mut. Life Ins. Co.*, 979 F.2d 254, 259 (1st Cir. 1992) ("A litigant who seeks out a federal forum when a state-court forum is equally available to him cannot justifiably complain if the federal court manifests great caution in blazing new state-law trails.").

Taking Plaintiff's Complaint at face value, he knew that Catholic Relief Services was no longer promising him spousal health benefits, yet he continued working for Catholic Relief Services anyway. Catholic Relief Services appreciates Plaintiff's good work but paid him all that was promised and owes him no wages under the MWPCL.

**IV.    Counts I–III Should Be Dismissed: Plaintiff Fails to Plead a Cause of Action Under Either the Maryland Fair Employment Practices Act or the Maryland Equal Pay for Equal Work Act.**

In Counts I and II, Plaintiff alleges that the termination of his spousal health benefits, the provision of which violated Catholic Relief Services' sincerely held religious beliefs, amounted to sexual orientation discrimination and sex discrimination in violation of the Maryland Fair Employment Practices Act. In Count III, Plaintiff alleges that the termination of those benefits amounted to sex discrimination in violation of the Maryland Equal Pay for Equal Work Act.

24

709391

However, because the gravamen of Plaintiff's Complaint is disparate treatment on the basis of sexual orientation—*i.e.*, his benefits were terminated because Catholic Relief Services "does not cover same-sex spouses under its medical insurance plan," Compl. ¶ 26—Counts II and III must be dismissed.  While Count I fairly characterizes Plaintiff's claim as sounding in sexual orientation discrimination,[3] the Maryland Fair Employment Practices Act exempts religious organizations, such as Catholic Relief Services, from claims relating to the "employment of individuals of a particular religion, ***sexual orientation***, or gender identity to perform work connected with the activities of the religious entity."  Md. Code Ann., State Gov't § 20-604 (emphasis added).  Whatever coverage the statute might extend to Plaintiff were he employed by a secular employer, it does not extend to his claims against Catholic Relief Services.

---

[3] To be clear, Catholic Relief Services does not concede that its termination of spousal health benefits, the provision of which violated its sincerely held religious beliefs, constitutes "discrimination" in any sense.  The point simply is that, accepting Plaintiff's allegations without any of the facts he omits or the religious freedom defenses Catholic Relief Services will ultimately assert, he pleads ***at most*** a claim for sexual orientation discrimination.

709391

**A.    Counts II and III Should Be Dismissed: Maryland's Employment Statutes Distinguish Between "Sex" and "Sexual Orientation," but the Disparate Treatment Plaintiff Alleges Relates Only to His Sexual Orientation.**

The sole bases for Plaintiff's discrimination claim are that Catholic Relief Services (1) informed him that "it should not have provided spousal coverage to Mr. Doe's husband . . . because it does not cover same-sex spouses under its medical insurance plan," and (2) subsequently terminated that coverage.  Compl. ¶¶ 26, 43; *see* Compl. Ex. 2 at 2 ("Following the Catholic Church's definition of marriage, we cannot offer benefits to unmarried domestic partners, nor to same-sex spouses[.]").  As the Summary of Employee Benefits brochure appended to the Complaint makes plain, the sole reason why Plaintiff does not qualify for spousal health benefits is that Catholic teaching does not recognize same-sex marriage, and Catholic Relief Services is a Catholic institution. Nothing in Plaintiff's Complaint calls this explanation into question or suggests there is any more to the story than a Catholic institution following Catholic doctrine.  Nothing in the Complaint suggests Plaintiff has been singled out or subject to adverse treatment because he is a biological male.  For example, the Complaint does not allege that Catholic Relief Services only applies this policy to men in same-sex marriages but not to women in same-sex marriages.  Thus,

26

while Plaintiff includes counts for "sex" discrimination, his well-pleaded factual allegations establish only a plausible claim for "sexual orientation" discrimination.  Plaintiff's claim of "sex" discrimination is based on the assumption that "sexual orientation" is always covered by the term "sex," however this is an erroneous legal conclusion under Maryland law.  It is clear that under Maryland law (regardless of the interpretations of federal statutes), "sexual orientation" and "sex" are distinct categories.

The Supreme Court's 6-3 decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), interpreted a federal statute, Title VII of the Civil Rights Act of 1964, and not any Maryland statute prohibiting discrimination.  The Supreme Court did not address or resolve the meanings of the terms "sex" and "sexual orientation" as those specifically separate terms are used in Maryland's anti-discrimination statutes.  *See also* Black's Law Dictionary (11th ed. 2019) (defining sex as "[t]he sum of the peculiarities of structure and function that distinguish a male from a female organism; gender," and sexual orientation as "[a] person's predisposition or inclination toward sexual activity or behavior with other males or females; heterosexuality, homosexuality, or bisexuality").

709391

Assuming for the sake of argument that, in light of *Bostock*, federal statutes proscribing sex discrimination may also proscribe sexual orientation discrimination,[4] Maryland employment law differs from federal employment law in that the Maryland statutes treat "sex" and "sexual orientation" as distinct categories.  The Maryland General Assembly has expressly included protection against sexual orientation discrimination in some (but not all) employment statutes.  *See* Md. Code Ann., State Gov't 20-606(a)(1)(i) (including among protected categories "race, color, religion, ***sex***, age, national origin, marital status, ***sexual orientation***, ***gender identity***, genetic information, or disability" (emphasis added)); *Parrish v. Tile Shop, LLC*, No. JKB-16-1177, 2016 WL 8669919, at *6 n.3 (D. Md. Sept. 30, 2016) (applying pre-*Bostock* jurisprudence and recognizing that a "MFEPA claim covers protected categories (sexual orientation and gender identity) not covered by Title VII").  This separate treatment of "sex" and "sexual orientation" differentiates Maryland's anti-discrimination statutes from their federal counterparts, as "[s]ince 1964 . . . Congress has considered several

---

[4] *But see Bostock*, 140 S. Ct. at 1753 ("The employers worry that our decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination. . . . But none of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today.").

proposals to add sexual orientation to Title VII's list of protected characteristics, but no such amendment has become law."  *Bostock*, 140 S. Ct. at 1747.

Plaintiff's claims for sex discrimination in Counts II and III could only survive based on an erroneous interpretation of Maryland law that discrimination on the basis of sex includes discrimination on the basis of sexual orientation.  Not only would Plaintiff's interpretation of sexual orientation discrimination as coterminous with sex discrimination render those separate categories in the Maryland Fair Employment Practices Act as surplusage, his interpretation also would undercut the legislative framework that was designed to exempt religious employers from claims of sexual orientation discrimination. As discussed below, the Maryland General Assembly made an express decision to exempt religious employers from claims of sexual orientation discrimination, after considering social values of both freedom of religion and protection against discrimination.  The Maryland Fair Employment Practices Act does not contain a religious exemption for sex discrimination.  Conflating the two categories, as Plaintiff attempts to do in Counts II and III, undermines the careful balance struck by the Maryland General Assembly.

709391

Unlike the Maryland Fair Employment Practices Act, the Maryland Equal

Pay for Equal Work Act does not bar discrimination on the basis of sexual

orientation, though it does bar discrimination on the basis of gender identity, as

well as sex.  *See* Md. Code Ann., Lab. & Empl. § 3-304(b)(1)(i) ("An employer

may not discriminate between employees in any occupation by . . . paying a

wage to employees of one sex or gender identity at a rate less than the rate paid

to employees of another sex or gender identity . . . .").  The omission was no

drafting error:  in a 2016 amendment to the Maryland Equal Pay for Equal Work

Act through which the General Assembly added gender identity as a protected

category, the legislature incorporated by reference the definition of gender

identity that applies to the Maryland Fair Employment Practices Act and stated

its legislative purpose of "altering a certain provision of law concerning equal

pay for equal work to prohibit discrimination on the basis of gender identity."

2016 Md. Laws ch. 556 § 1; *see* Md. Code Ann., Lab. & Empl. § 3-301(c) ("'Gender

identity' has the meaning stated in § 20-101 of the State Government Article.").

Sexual orientation has been included as a protected category under the

Maryland Fair Employment Practices Act for many years.  It is not plausible that

the legislature overlooked that category in updating the Maryland Equal Pay for

Equal Work Act.  Rather, the legislature meant what it said:  the Maryland Equal Pay for Equal Work Act prohibits pay discrimination on the basis of sex or gender identity, not sexual orientation.  *See Raines v. Am. Fed'n of Teachers—Md. Prof'l Emps. Council*, No. ADC-19-1266, 2019 WL 4467132, at *10 (D. Md. Sept. 18, 2019) ("For a plaintiff to establish a *prima facie* case under the MEPA, she must prove (1) 'her employer has paid different wages to employees of opposite sexes,' (2) 'said employees hold jobs that require equal skill, effort, and responsibility,' and (3) 'such jobs are performed under similar working conditions.'" (citations omitted)).  Since "legislature[s] must be allowed leeway to approach a perceived problem incrementally," *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993), it is appropriate for the General Assembly to address sexual orientation discrimination in some statutes but not others, and courts have no role in second guessing that legislative line drawing.

Because Plaintiff's well-pleaded facts, as distinct from his legal conclusions that are accorded no deference, show that his spousal health benefits were terminated because of Catholic teachings concerning same-sex marriage, he has no claim for sex discrimination under Maryland law.  While he might have a claim for sexual orientation discrimination were he employed by a secular

31

employer, as discussed below, that claim fails too because of a statutory

exception that protects the religious exercise rights of institutions that recognize

marriage as a sacramental union between one man and one woman.

> **B.      *Count I Should Be Dismissed: Catholic Relief Services Is a Religious Entity, and Plaintiff Performs Work "Connected with the Activities of the Religious Entity," So His Sexual Orientation Discrimination Claim Is Barred.***

As noted above, Maryland's Fair Employment Practices Act prohibits

sexual orientation discrimination in the workplace but includes a carve-out for

religious entities.  The statute does not apply to a "religious corporation,

association, educational institution, or society with respect to the employment of

individuals of a particular religion, sexual orientation, or gender identity to

perform work connected with the activities of the religious entity."  Md. Code

Ann., State Gov't § 20-604(2).  Plaintiff alleges (correctly) that Catholic Relief

Services is a "501(c)(3) non-profit organization that is incorporated in the state of

Maryland," Compl. ¶ 9, and his Complaint demonstrates that *Catholic* Relief

Services—United States Conference of *Catholic Bishops* is an arm of the Catholic

Church that follows Catholic Church teachings.  *See id.* ¶ 39 ("Following the

Catholic Church's definition of marriage"); *id.* ¶ 114 (same); Compl. Ex. 2 at 1

(Summary of Employee Benefits brochure appended to Complaint) ("Catholic

Relief Services is the official international humanitarian agency of the Catholic community in the United States."); *id.* at 2 ("Following the Catholic Church's definition of marriage, we cannot offer benefits to unmarried domestic partners, nor to same-sex spouses[.]").  There can be no serious dispute that **Catholic** Relief Services is the type of organization covered by the exemption in section 20-604 of the statute.

Nor can there be any serious dispute that Plaintiff's job responsibilities, as described in the Complaint, constitute "work connected with the activities of the religious entity," Md. Code Ann., State Gov't § 20-604(2).  Plaintiff was initially hired to perform internal IT services, Compl. ¶ 13, and was subsequently promoted to a position where he is responsible for designing databases and dashboards and performing related administrative and training services, *id.* ¶ 40.  Plaintiff asserts in Count I that his "job duties focused solely on CRS's business functions and were completely unrelated to any religious aspect of CRS," Compl. ¶ 58, but those functions are clearly connected with the activities of Catholic Relief Services.  The statutory test does not require religious duties, but rather is whether Plaintiff was employed to perform work "connected with the activities" of Catholic Relief Services, which he obviously was.  Plaintiff's phrasing evokes

the ministerial exception to the enforcement of Title VII and other federal

employment statutes that is grounded in the First Amendment's Religion

Clauses.  *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060

(2020).  But the exemption in section 20-604 of the Maryland Fair Employment

Practices Act does not require Catholic Relief Services to establish that Plaintiff

holds a ministerial position or even that his work relates to Catholic Relief

Services' *religious* activities—just that it relates to the organization's activities.

While case law construing section 20-604 of the Maryland Fair

Employment Practices Act is limited, other state legislatures have enacted similar

statutes that prohibit forms of employment discrimination while carving out an

exemption for religious organizations, and courts have rejected discrimination

claims that trigger these exemptions, including at the pleading stage.  *See, e.g.*,

*Horn v. Azusa Pac. Univ.*, No. 2:18-cv-09948-CAS-PLAx, 2019 WL 1557445, at *4-5

(C.D. Cal. Apr. 9, 2019) (dismissing claim brought pursuant to California statute);

*Castellano v. Brigham Young Univ.*, No. 2:16-cv-01205-JNP-EJF, 2018 WL 4271039,

at *2 (D. Utah Aug. 16, 2018) (recommending dismissal of claim brought

pursuant to Utah statute), *recommendation and report adopted*, 2018 WL 4258164 (D.

Utah Sept. 6, 2018), *appeal docketed*, No. 18-4142 (10th Cir. Oct. 2, 2018); *Knodel v.*

34

*Providence Health & Servs.*, No. C10-5292BHS, 2011 WL 3563912, at *3 (W.D. Wash. Aug. 15, 2011) (granting summary judgment in favor of defendant with respect to claim brought pursuant to Washington statute); *King v. Warner Pac. Coll.*, 437 P.3d 1172, 1179-80 (Or. Ct. App. 2019) (affirming summary judgment in favor of defendant with respect to claim brought pursuant to Oregon statute).

The dearth of case law construing section 20-604 is no reason for this Court to defer dismissal of Plaintiff's claim.  No discovery could alter the facts that (1) Catholic Relief Services is a religious organization and (2) Plaintiff was hired to perform work connected with the activities of that organization.  His claim for sexual orientation discrimination under the Maryland Fair Employment Practices Act is accordingly barred, and Count I must be dismissed.[5]

## Conclusion

The Court should dismiss Counts I–VII  of Plaintiff's Complaint with prejudice.

---

[5] Because section 20-604 by its plain terms excludes Plaintiff's sexual orientation discrimination claim, he could not have reasonably believed that he was opposing sexual orientation discrimination in violation of the Maryland Fair Employment Practices Act when he opposed the termination of his spousal health benefits, so his corresponding retaliation claim in Count X must also be dismissed.  *See Clark v. Sunipa II Inc.*, No. 8:10-cv-02027-AW, 2011 WL 5439000, at *4 (D. Md. Nov. 8, 2011) ("For [a plaintiff-employee's] activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct that she opposes constitutes unlawful discrimination under Title VII." (citations omitted)).

709391

Respectfully Submitted,

**GALLAGHER EVELIUS & JONES LLP**

_____/s/ Joseph C. Dugan_____
David W. Kinkopf, Fed. Bar No. 23366
dkinkopf@gejlaw.com
Joseph C. Dugan, Fed. Bar No. 19637
jdugan@gejlaw.com
218 N. Charles Street
Baltimore, Maryland 21201
Tel: (410) 727-7702
Fax: (410) 468-2786

_Attorneys for Defendant Catholic Relief Services_

Date:  August 24, 2020

36

709391