## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: CCB-20-1815** |
| | ) | |
| **CATHOLIC RELIEF SERVICES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### REPLY IN SUPPORT OF PLAINTIFF JOHN DOE'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO
### DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
### <u>MOTION TO EXCLUDE EXPERT TESTIMONY</u>

Eve L. Hill, Esq. (Bar. No. 19938)
Anthony J. May, Esq. (Bar. No. 20301)
Lauren A. DiMartino (Bar No. 22046)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com
amay@browngold.com
ldimartino@browngold.com

Shannon C. Leary, Esq. (Bar No. 18396)
James A. Hill, Esq. (Bar No. 21718)
Gilbert Employment Law, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, Maryland 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Sleary-efile@gelawyer.com
Jhill-efile@gelawyer.com

*Counsel for Plaintiff*

Dated: March 21, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ....................................................................................... 1

REPLY IN SUPPORT OF MR. DOE'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ............................................................................................... 3

REPLY ARGUMENT .................................................................................. 3

I.      CRS's Purported Religious Motive Does Not Strip the Court of
Jurisdiction to Remedy Sex-Based Discrimination. ................................. 3

II.     CRS Ignores Longstanding Precedent Establishing that No Applicable
Exemptions Exist to Justify Its Discrimination Based on Sex and Sexual
Orientation. .............................................................................................. 6

       A.      Title VII's § 702 Exemption Does Not Apply to Claims of Sex
Discrimination .............................................................................. 6

       B.      Maryland Law Does Not Create an Exception That Would
Condone CRS's Discrimination .................................................... 8

III.    CRS Disregards the Overwhelming Majority of Precedent Concluding that
RFRA is Not a Defense to Its Discrimination Against Mr. Doe on the
Basis of Sex ............................................................................................ 11

       A.      Requiring Mr. Doe to Stand In for the Government is Unsupported
by Precedent and Fundamental Principles of Statutory
Interpretation ............................................................................... 11

       B.      Enforcing Title VII is the Least Restrictive Means of Achieving
Mr. Doe's Compelling Interest to be Free from Employment
Discrimination at CRS. ............................................................... 14

             1.      Requiring a Multinational Employer to Provide Equal
Compensation Among Similarly-Situated, Non-Ministerial
Employees—Regardless of Their Sexual Orientation—is a
Compelling Interest ...................................................... 15

             2.      Title VII is a Neutral Law Containing Tailored Exemptions
for Religious Organizations and Is, Therefore, Minimally
Restrictive. .................................................................... 17

             3.      CRS Provides No Credible Evidence that Its Religious
Practices Are Substantially Burdened by Providing
Dependent Benefits to All Employees. ........................... 21

       4.      Because Anti-Discrimination Statutes Are Neutral Laws of General Applicability, Enforcement Does Not Violate the Free Exercise Clause. .................................................................23

       5.      The Constitutional Avoidance Doctrine Is Inapplicable. ...............24

OPPOSITION TO CRS'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE THE TESTIMONY OF DR. TODD SALZMAN ..............................................25

RESPONSE ARGUMENT ...................................................................................25

I.      Under the Circumstances, a Reasonable Juror Could Conclude that CRS's Threats Constitute Retaliation in Violation of Federal and State Law. .................26

II.     The Extent of Mr. Doe's Damages Are Classic Issues of Fact that Should Be Resolved by a Jury .............................................................................28

    A.     Sufficient Evidence in the Record Creates Genuine Disputes of Material Fact Concerning Mr. Doe's Damages, Mitigation Efforts, and CRS's Entitlement to an Offset. ..........................................28

       1.      A Jury Should Resolve Whether ██████████████ Entitles It to an Offset or Whether it Could be Considered a Collateral Source. ...........................................................29

       2.      A Jury Could Find that Mr. Doe and His Spouse were Reasonably Diligent in Securing Alternative Health Insurance and Treatment. .............................................31

    B.     Mr. Doe's Emotional Distress Damages Are Well Documented and Create a Genuine Dispute of Material Fact ...............................33

    C.     CRS's Treatment of Mr. Doe, Refusal to Accept Precedent, and Knowledge of the Viable Ways to Provide Dependent Benefits Create a Genuine Dispute of Material Fact Concerning Punitive Damages. ..................................................................................36

III.    CRS's Premature Attempt to Disqualify Mr. Doe's Expert Should Be Rejected. .............................................................................................38

CONCLUSION ....................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdulhaseeb v. Calbone*,
   600 F.3d 1301 (10th Cir. 2010) ............................................................ 40

*Adams v. NVR Homes, Inc.*,
   141 F. Supp. 2d 554 (D. Md. 2001)........................................................ 39

*Amaya v. DGS Constr., LLC*,
   249 Md. App. 462, *cert. granted*, 474 Md. 719 (2021) ........................... 8

*Anderson v. G.D.C., Inc.*,
   281 F.3d 452 (4th Cir. 2002) ......................................................... 37, 38

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................ 24

*Aparicio v. Christian Union, Inc.*,
   No. 18-CV-0592 (ALC), 2019 WL 1437618 (S.D.N.Y. Mar. 29, 2019) ................... 5

*Barbre v. Pope*,
   402 Md. 157 (2007) ............................................................................. 8

*Bikur Cholim, Inc. v. Village of Suffern*,
   664 F. Supp. 2d 267 (S.D.N.Y. 2009) ............................................... 6, 40

*Billard v. Charlotte Cath. High Sch.*,
   No. 3:17-CV-00011, 2021 WL 4037431 (W.D.N.C. Sept. 3, 2021) .............. *passim*

*Blackstone v. Sharma*,
   461 Md. 87 (2018) .............................................................................. 8

*Boggan v. Miss. Conf. of the United Methodist Church*,
   222 Fed. App'x 352 (5th Cir. 2007) ............................................... 12, 37

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020)................................................................... *passim*

*Boyd v. Harding Acad. of Memphis*,
   88 F.3d 410 (6th Cir. 1996) ............................................................. 6–7

*Brady v. Thurston Motor Lines, Inc.*,
   753 F.2d 1269 (4th Cir. 1985) ............................................................ 31

*Brandon v. Kinter*,
   938 F.3d 21 (2d Cir. 2019) ................................................................ 40

*Bryant v. Aiken Reg'l Med. Ctrs. Inc.*,
    333 F.3d 536 (4th Cir. 2003) ................................................... 33, 35, 36

*Bryce v. Episcopal Church in the Diocese of Colo.*,
    289 F.3d 648 (10th Cir. 2022) .......................................................... 4–5

*Buettner-Hartsoe v. Baltimore Lutheran High Sch. Ass'n*,
    No. CV RDB-20-3132, 2021 WL 2580385 (D. Md. June 23, 2021) ...................... 4

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006) ................................................................ 26, 27–28

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ..................................................................... 14

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940) ..................................................................... 20

*Carter v. Blakely*,
    No. 1:97CV00982, 1999 WL 1937226 (M.D.N.C. Sept. 1, 1999) .......................... 35

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
    508 U.S. 520 (1993) .................................................................. 19–20

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ..................................................................... 39

*Doe v. Cath. Relief Servs.*,
    529 F. Supp. 3d 440 (D. Md. 2021) ............................................... 9, 10, 11

*Dole v. Shenandoah Baptist Church*,
    899 F.2d 1389 (4th Cir. 1990) ................................................ 15, 16, 20, 21

*E.E.O.C. v. Catholic Univ. of Am.*,
    83 F.3d 455 (D.C. Cir. 1996) ............................................................ 12

*E.E.O.C. v. Consol Energy, Inc.*,
    860 F.3d 131 (4th Cir. 2017) ............................................................ 29

*E.E.O.C. v. CTI Glob. Sols., Inc.*,
    815 F. Supp. 2d 897 (D. Md. 2011) ...................................................... 31

*E.E.O.C. v. Ecology Servs., Inc.*,
    447 F. Supp. 3d 420 (D. Md. 2020) ...................................................... 29

*E.E.O.C. v. Fremont Christian Sch.*,
    781 F.2d 1362 (9th Cir. 1986) .......................................................... 31

*E.E.O.C. v. Great Steaks, Inc.*,
    667 F.3d 510 (4th Cir. 2012) ........................................................... 13

*E.E.O.C. v. Miss. Coll.*,
  626 F.2d 477 (5th Cir.1980) ................................................................ 5, 18, 20, 23

*E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
  884 F.3d 560 (6th Cir. 2018) ................................................... 14, 15, 16, 17, 20

*E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C.*,
  213 F.3d 795 (4th Cir. 2000) ........................................................... 4, 18–19

*E.E.O.C. v. Tree of Life Christian Sch.*,
  751 F. Supp. 700 (S.D. Ohio 1990) ...................................................... 21–22

*Edley-Worford v. Va. Conf. of United Methodist Church*,
  430 F. Supp. 3d 132 (E.D. Va. 2019) .......................................................... 4

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*,
  485 U.S. 568 (1988) ................................................................................ 24

*Equitable Life Assur. Soc. of U.S. v. Comm'n on Human Rel.*,
  290 Md. 333 (1981) ........................................................................ 8, 10, 40

*Fiallos v. Hamzah Slaughter House, LLC*,
  No. CV 20-03577-JMC, 2022 WL 111165 (D. Md. Jan. 11, 2022) ............... 29, 36–37

*Ford v. McGinnis*,
  352 F.3d 582 (2d Cir. 2003) ...................................................................... 40

*Ford v. Nicks*,
  866 F.2d 865 (6th Cir. 1989) ..................................................................... 31

*Fox v. Gen. Motors Corp.*, 247 F.3d 169 (4th Cir. 2001) .................................. 33

*Franks v. Bowman Transp. Co., Inc.*,
  424 U.S. 747 (1976) ............................................................................ 28, 29

*Fulton v. City of Phila.*,
  141 S. Ct. 1868 (2021) ...................................................................... 18, 19, 21

*Gen. Conf. Corp. of Seventh–Day Adventists v. McGill*,
  617 F.3d 402 (6th Cir. 2010) ................................................................ 12, 37

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ................................................................................ 15

*Goodman v. Archbishop Curley High Sch., Inc.*,
  149 F. Supp. 3d 577 (D. Md. 2016) ......................................................... 4, 37

*Goza v. Memphis Light, Gas & Water Div.*,
  398 F. Supp. 3d 303 (W.D. Tenn. 2019) ....................................................... 22

v

*Haas v. Lockheed Martin Corp.*,
    396 Md. 469 (2007) ............................................................................ 9–10

*Hankins v. Lyght*,
    441 F.3d 96 (2d Cir. 2006) ................................................................ 11, 16

*Haughton v. Blackships, Inc.*,
    462 F.2d 788 (5th Cir. 1972) ................................................................... 29

*Hawkins v. 1115 Legal Serv. Care*,
    163 F.3d 684 (2d Cir. 1998) .................................................................... 31

*Henderson v. Kennedy*,
    253 F.3d 12 (D.C. Cir. 2001) .................................................................. 21

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) .................................................................... 35

*Hooper v. California*,
    155 U.S. 648 (1895) ................................................................................. 24

*Hubbard v. J Message Grp. Corp.*,
    325 F. Supp. 3d 1198 (D.N.M. 2018) ......................................................... 5

*Hydro Inv., Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) ........................................................................ 35

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ...................................................................... 39

*In re Young*,
    141 F.3d 854 (8th Cir. 1998) ................................................................... 12

*Kerr v. Enoch Pratt Free Libr. of Balt. City*,
    149 F.2d 212 (4th Cir. 1945) .............................................................. 22–23

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999) ........................................................................... 37, 38

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................. 39

*Levitan v. Ashcroft*,
    281 F.3d 1313 (D.C. Cir. 2002) ............................................................... 40

*Lima v. MH & WH, LLC*,
    No. 5:14-CV-896-FL, 2019 WL 2602142 (E.D.N.C. Mar. 8, 2019) ...................... 33

*Listecki v. Off. Comm. of Unsecured Creditors*,
    780 F.3d 731 (7th Cir. 2015) ...................................................... 12, 16, 37

*Long v. Ringling Bros.-Barnum & Bailey Combined Shows*,
   882 F. Supp. 1553 (D. Md. 1995) ....................................................... 28

*Mast v. Fillmore Cnty., Minn.*,
   141 S. Ct. 2430 (2021) .............................................................. 19–20

*Mathis v. Christian Heating & Air Conditioning, Inc.*,
   158 F. Supp. 3d 317 (E.D. Pa. 2016) ................................................ 16

*McCallum v. Billy Graham Evangelistic Ass'n*,
   824 F. Supp. 2d 644 (W.D.N.C. 2011) ................................................ 4

*Miller v. AT & T Corp.*,
   250 F.3d 820 (4th Cir. 2001) ......................................................... 31

*Montrose Christian Sch. Corp. v. Walsh*,
   363 Md. 565 (2001) ................................................................... 23

*Mykland v. CommonSpirit Health*,
   No. 3:21-cv-05061-RAJ, 2021 WL 4209429 (W.D. Wash. Sept. 16, 2021) ............ 10

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) .............................................. 6, 22, 40

*Oncale v. Sundowner Offshore Srvcs., Inc.*,
   523 U.S. 75 (1998) ................................................................. 26, 27

*Price v. City of Charlotte*,
   93 F.3d 1241 (4th Cir. 1996) ........................................................ 36

*Pulse Med. Instruments, Inc. v. Drug Impairment Detection Srvcs., LLC*,
   858 F. Supp. 2d 505 (D. Md. 2012) .................................................. 29

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*,
   772 F.2d 1164 ................................................................. *passim*

*Redhead v. Conf. of Seventh-Day Adventists*,
   440 F. Supp. 2d 211 (E.D.N.Y. 2006) .......................... 11–12, 14, 20, 40

*Ricks v. Abbott Lab'ys*,
   198 F.R.D. 647 (D. Md. 2001) ....................................................... 36

*Ruiz-Diaz v. United States*,
   703 F. 3d 483 (9th Cir. 2012) ........................................................ 5

*Russell v. Pallito*,
   No. 5:15-CV-126-GWC-JMC, 2019 WL 6271358 (D. Vt. Nov. 25, 2019) ......... 6, 39–40

*Rweyemamu v. Cote*,
   520 F.3d 198 (2d Cir. 2008) ......................................................... 11

*Schwenke v. Ass'n of Writers & Writing Programs,*
  510 F. Supp. 3d 331 (D. Md. 2021) ........................................................................ 9

*Sloas v. CSZ Transp. Inc.,*
  616 F.3d 380 (4th Cir. 2010) ........................................................................ 29–30

*Snyder v. Holy Cross Hosp.,*
  30 Md. App. 317 (1976) ........................................................................ 9, 23

*Starkey v. Roman Cath. Archdiocese of Indianapolis,*
  496 F. Supp. 3d 1195 (S.D. Ind. 2020) ........................................................................ 6

*Sullivan v. Glock, Inc.,*
  175 F.R.D. 497 (D. Md. 1997) ........................................................................ 34

*Sutton v. Providence St. Joseph Med. Ctr.,*
  192 F.3d 826 (9th Cir. 1999) ........................................................................ 12–13, 37

*Tandon v. Newsom,*
  141 S. Ct. 1294 (2021) ........................................................................ 20

*Thomas v. Review Board,*
  450 U.S. 707 (1981) ........................................................................ 20

*Tinoco v. Thesis Painting, Inc.,*
  No. GJH-16-752, 2018 WL 4599677 (D. Md. Sept. 24, 2018) .................................... 33, 35, 36

*Tomic v. Cath. Diocese,*
  442 F.3d 1036 (7th Cir. 2006) ........................................................................ 12, 37

*True v. Pleasant Care, Inc.,*
  No. 2:97CV20-DE, 2000 WL 33706383 (E.D.N.C. Jan. 3, 2000) ........................................ 35

*United States v. Bauer,*
  84 F.3d 1549 (9th Cir. 1996) ........................................................................ 23, 40

*United States v. Price,*
  288 F.2d 448 (4th Cir. 1961) ........................................................................ 29

*Watson v. Jones,*
  80 U.S. 679 (1871) ........................................................................ 4

*Werft v. Desert Southwest Annual Conf. of United Methodist Church,*
  377 F.3d 1099 (9th Cir. 2004) ........................................................................ 14–15

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ........................................................................ 14

*Whitney v. Greater N.Y. Corp. of Seventh-day Adventists,*
  401 F. Supp. 1363 (S.D.N.Y. 1975) ........................................................................ 5

*Wisc. Province of Soc'y of Jesus v. Cassem,*
  373 F. Supp. 3d 378 (D. Conn. 2019) ................................................... 11

**Constitutional Provisions**

Md. Decl. Rts. art. 36 ........................................................................... 9, 24

**Statutes**

11 U.S.C. § 544 ...................................................................................... 12

11 U.S.C. § 548 ...................................................................................... 12

29 U.S.C. § 260 ...................................................................................... 38

42 U.S.C. § 1981a .......................................................................... 28, 33, 37

42 U.S.C. § 2000-5 ................................................................................. 31

42 U.S.C. § 2000bb ................................................................................ 13

42 U.S.C. § 2000e ............................................................................. 25, 31

Md. Code Ann., State Gov't § 20-602 ..................................................... 8

Md. Code Ann., State Gov't § 20-604 .................................................. 2, 8

Md. Code Ann., State Gov't § 20-1013 ................................................. 37

**Rules**

Fed. R. Evid. 702 ................................................................................... 39

**Other Authorities**

Fed. R. Evid. 702 Advisory Committee's Notes ..................................... 38

Glendora C. Hughes, *The Evolution of Maryland's Commission on Human Relations
  Law*, 42-AUG Md. B.J. 24, 25 (July/Aug. 2009) ..................................... 9

U.S. Equal Emp. Opp. Comm'n., *Coverage of Federal Government Agencies*,
  https://www.eeoc.gov/coverage-federal-government-agencies (last visited Mar. 13,
  2022) .................................................................................................. 17

## <u>INTRODUCTION</u>

This is a straightforward case of discrimination. CRS treats Plaintiff John Doe differently from his coworkers in opposite-sex marriages because he is a man married to a man. There is no genuine dispute—legally or factually—that Defendant Catholic Relief Services' ("CRS") refusal to compensate Mr. Doe the same as his colleagues—because of who he loves—violates the law. In short, this case is about equality, not ecclesiastics. *See generally* ECF No. 41-1, Pl.'s Cross-Mot. for Partial Summ. J. (hereinafter "Pl.'s Cross-MSJ").

CRS's defense can be summarized as follows: We are Catholic; our religion allows us to discriminate. *See generally* Def.'s Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J., Cross-Mot. for Summ. J., and Mot. to Exclude, ECF No. 45, and Mem. in Supp., ECF No. 46-1 (hereinafter "Def.'s Cross-MSJ"). Ignoring applicable law and undisputed facts, CRS attempts to weave its religion into the fabric of this case to strip the Court of its jurisdiction and shield itself from liability, turning this case on its head to assert that *its* rights, not those of Mr. Doe, have been violated. But CRS is "not—and should not be—above the law." *Billard v. Charlotte Cath. High Sch.*, No. 3:17-CV-00011, 2021 WL 4037431, at *11 (W.D.N.C. Sept. 3, 2021) (citations omitted). There is only one conclusion for this Court to reach: CRS's religious beliefs have no bearing on providing Mr. Doe with equal dependent benefits.

The Court should grant Mr. Doe's Motion for Partial Summary Judgment on all issues. Because ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ providing equal dependent benefits is unrelated to its business goal of assisting the poor and vulnerable. CRS's attempt to ensnare the Court in a "theological thicket" of CRS's own devise should be rejected. *See* Def.'s Cross-MSJ 14.

Moreover, there are no applicable religious defenses to Mr. Doe's claims under Title VII of the Civil Rights Act ("Title VII"), the Equal Pay Act ("EPA"), Maryland Fair Employment Practices Act ("MFEPA"), or Maryland Equal Pay for Equal Work Act ("MEPWA") that permit CRS to profit from the labor of its LGBTQ employees while treating them as second-class citizens. CRS's overly broad interpretation of Title VII's exemption under § 702, Def.'s Cross-MSJ 17–19, contravenes longstanding precedent finding that a religious employer cannot discriminate against its employees on the basis of sex. Adopting CRS's view "would let religious employers completely bypass Title VII liability, if they could prove their discrimination was related to a religious justification" and "erase protections against racial discrimination, sexism, gender discrimination, sexual orientation discrimination, and xenophobia by employers against hundreds of thousands of employees." *Billard*, 2021 WL 4037431 at *10.

Regarding MFEPA, CRS concedes that no Maryland court has found Md. Code Ann., State Gov't § 20-604 to be broader than its federal counterpart. *See* Def.'s Cross-MSJ 22. The statute's ambiguous language, remedial purpose, and legislative history, coupled with longstanding precedent and interpretation by the Maryland Commission on Human Rights, reveal the hollowness of CRS's claims.

CRS fails to grapple with the "overwhelming majority of precedent" holding that the Religious Freedom Restoration Act ("RFRA") does not apply in cases involving only private parties. *Compare* Def.'s Cross-MSJ 25–27 *with Billard*, 2021 WL 4037431, at *18, 22. CRS defies basic tenets of statutory construction and incorrectly argues that the Court should force Mr. Doe to stand in the government's shoes. Because Title VII, EPA, MFEPA, and MWEPA are neutral laws of general applicability, and because this case does not involve an interpretation of RFRA (or any other legal doctrine) that implicates constitutional issues, CRS's arguments under

2

the Free Exercise Clause and the doctrine of constitutional avoidance fare no better. Def.'s Cross-MSJ 40–44.

CRS goes so far as to demand summary judgment on Mr. Doe's retaliation and damages claims, despite those issues involving quintessential fact questions for a jury to resolve. Viewing the facts in the light most favorable to Mr. Doe, a juror could conclude that CRS's threats would dissuade a reasonable worker from pursuing protected activity. The valuation of Mr. Doe's damages, including his out-of-pocket expenses, costs of medical procedures, emotional distress, and punitive damages, are all classic fact issues for a jury.

Finally, CRS attempts to disqualify Mr. Doe's expert, Dr. Todd Salzman, prematurely. Dr. Salzman has not been offered as a witness at summary judgment because the Court has not yet ruled on whether CRS's RFRA defense can proceed. But if the Court finds that CRS can avail itself of such a defense in a suit between private parties, and if the Court rejects Mr. Doe's arguments that the "facts" upon which CRS relies are not insufficient as a matter of law to establish a substantial burden, then the issue should be submitted to a jury.

Accordingly, this Court should grant Mr. Doe's Motion for Partial Summary Judgment and deny CRS's Motion for Summary Judgment.

**REPLY IN SUPPORT OF MR. DOE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**<u>REPLY ARGUMENT</u>**

**I.    CRS's Purported Religious Motive Does Not Strip the Court of Jurisdiction to Remedy Sex-Based Discrimination.**

CRS's termination of Mr. Doe's spousal benefits because he is a man married to a man has no bearing on CRS's "spiritual functions." *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). CRS's attempt to insert its religion into this case to usurp the Court's jurisdiction should be rejected.

3

"The church autonomy doctrine is *narrow* in the sense that it prevents civil courts from taking 'cognizance of *purely* spiritual or ecclesiastical questions.'" *Billard*, 2021 WL 4037431, at *12 (emphasis added) (quoting *Watson v. Jones*, 80 U.S. 679, 710 (1871)). The principle of "ecclesiastical abstention" is that a court may not review "certain matters involving religious doctrine." *Buettner-Hartsoe v. Balt. Lutheran High Sch. Ass'n*, No. CV RDB-20-3132, 2021 WL 2580385, at *10 (D. Md. June 23, 2021).

Here, there is no purely spiritual question at stake. CRS does not dispute that Mr. Doe's dependent benefits were terminated because he is a man married to a man. *See* ECF No. 25, ¶ 26 ("Admit[ting]" that "CRS also informed Mr. Doe that the reason it should not have provided spousal coverage to Mr. Doe's husband was because it does not cover same-sex spouses under its medical insurance plan."). Under *Bostock v. Clayton County*, CRS's conduct violates Title VII. 140 S. Ct. 1731, 1734 (2020). As explained below, Title VII's exemption for religious employers does not authorize CRS to use its religion as pretext for sex discrimination. *See Billard*, 2021 WL 4037431, at *7–11; *Goodman v. Archbishop Curley High Sch., Inc.*, 149 F. Supp. 3d 577, 586–88 (D. Md. 2016) (finding an "employer's assertion of a religious motive does not prevent a court from asking whether that motive was in fact a pretext" for discrimination); *see also Edley-Worford v. Virginia Conf. of United Methodist Church*, 430 F. Supp. 3d 132, 138 (E.D. Va. 2019).

Because CRS's "employment decision[]" to deny Mr. Doe's dependent benefits has no bearing on CRS's "spiritual functions," it is subject to Title VII scrutiny. *See Rayburn*, 772 F.2d at 1171–72 (citations omitted); *McCallum v. Billy Graham Evangelistic Ass'n*, 824 F. Supp. 2d 644, 649–50 (W.D.N.C. 2011) (citations omitted); *cf. Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655–57 (10th Cir. 2022) (applying church autonomy doctrine to issues of

church governance, *e.g.*, "the essential qualifications of a chaplain," and other matters that "involve the church's spiritual functions") (citations omitted).[1]

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████  CRS does not dispute that Mr. Doe's employment is entirely secular in nature. *See* Def.'s Cross-MSJ 16, n.8. Contrary to CRS's argument, the fact that an organization is religious does not make all its secular work religious. Accordingly, discriminatory decisions concerning the benefits of a ███████ employee performing CRS's secular work are within the Court's jurisdiction. *See, e.g., Billard*, 2021 WL 4037431, at *12–14; *accord E.E.O.C. v. Miss. Coll.*, 626 F.2d 477 (5th Cir.1980); *Whitney v. Greater N.Y. Corp. of Seventh-day Adventists*, 401 F. Supp. 1363 (S.D.N.Y. 1975).

Nonetheless, matters of religious doctrine are only at issue if a RFRA defense applies, but RFRA is not available in suits involving only private parties. *See infra* Reply Arg. § III.A. Even if a RFRA defense were available, wading into religious doctrine is unnecessary because, as a matter of law, Title VII is the least restrictive means of achieving the government's compelling interest in eradicating discrimination in the workplace. *See infra* Reply § III.B. And if substantial burden were at issue, CRS has not adduced evidence sufficient to raise a dispute of material fact regarding whether providing such benefits would "affect [CRS's] ability to practice [its] religion." *See Ruiz-Diaz v. United States*, 703 F. 3d 483, 486 (9th Cir. 2012). Nevertheless, if the

---

[1] The other cases CRS cites are inapposite. *Aparicio v. Christian Union, Inc.*, involved deciding who Christian Union allowed "to perform its highest religious roles." No. 18-CV-0592 (ALC), 2019 WL 1437618, at *9 (S.D.N.Y. Mar. 29, 2019). *Hubbard v. J Message Group Corp.*, applied the church autonomy doctrine to a tort claim involving "internal processes by which religious organizations discipline their members" and publishing defamatory statements about "shunn[ed]" church members. 325 F. Supp. 3d 1198, 1214–16 (D.N.M. 2018).

issue survives, Mr. Doe should be permitted to present factual evidence to a jury that CRS's religious practice would not be substantially burdened by providing him with equal dependent benefits. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (requiring a party asserting RFRA to "present evidence sufficient to allow a trier of fact rationally to find [that] . . . government action [would] 'substantially burden' the [party's] exercise of religion"); *accord Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 291 (S.D.N.Y. 2009); *Russell v. Pallito*, No. 5:15-CV-126-GWC-JMC, 2019 WL 6271358, at *4 (D. Vt. Nov. 25, 2019).[2]

## II.    CRS Ignores Longstanding Precedent Establishing that No Applicable Exemptions Exist to Justify Its Discrimination Based on Sex and Sexual Orientation.

### A.    Title VII's § 702 Exemption Does Not Apply to Claims of Sex Discrimination.

CRS's overbroad interpretation of Title VII's religious exemption under § 702 disregards decades of precedent that "Title VII does not confer upon religious organizations a license to make [employment] decisions on the basis of race, sex, or national origin." *Rayburn*, 772 F.2d at 1166. What CRS characterizes as "favor[ing] conduct compatible with its sincere religious beliefs," Def.'s Cross-MSJ 17, is really discrimination against a protected class.

Courts have consistently ruled that "[a]lthough Section[] 702 . . . give[s] religious institutions . . . more leeway for engaging in *religious* discrimination, they do not permit *sex* discrimination." *Billard*, 2021 WL 4037431, at *8 (emphasis added); *accord Boyd v. Harding*

---

[2] This evidence, if necessary, would include whether ██████████████████████████
████████████████████ would substantially burden the practice of its religion. *See Russell*, 2019 WL 6271358, at *4 (finding that "evidence that some members of [a] religious community hold a contrary interpretation . . . may be valuable to a jury in assessing . . . whether [a party's religion is] substantially burdened").

*Acad. of Memphis*, 88 F.3d 410, 413 (6th Cir. 1996); *Rayburn*, 772 F.2d at 1166; *Starkey v. Roman Cath. Archdiocese of Indianapolis*, 496 F. Supp. 3d 1195, 1203 (S.D. Ind. 2020).

CRS mischaracterizes the Fourth Circuit's holding in *Rayburn* to suggest that § 702 allows religious institutions to base relevant hiring decisions on religious preferences. Def.'s Cross-MSJ 18. CRS posits that "[i]f the law were otherwise, employees of religious organizations could plead around the exemption by calling a challenged action anything other than 'religious discrimination.'" *Id.* at 19. Ironically, that is the very gamesmanship in which *employers* like CRS—not *employees* like Mr. Doe—have attempted to engage, and which courts uniformly reject:

> Defendants' argument would allow a religious employer to convert any claim of discrimination on the basis of one of the protected classes under Title VII to a case of religious discrimination, so long as there was a religious reason behind the employment decision. This would effectively strip employees of religious institutions of all Title VII protections, if the employer's religion clashed with the employee's protected class status. If Congress had intended to allow religious employers to avoid liability for discriminating on the basis of race, sex, or national origin, it could have done so. By its very terms, [§ 702 applies] only to discrimination on the basis of religion.

*Billard*, 2021 WL 4037431, at *8 (cleaned up); *see also id.* at *10 ("[CRS's] argument would let religious employers completely bypass Title VII liability, if they could prove their discrimination was related to a religious justification. . . . eras[ing] protections against racial discrimination, sexism, gender discrimination, sexual orientation discrimination, and xenophobia by employers against hundreds of thousands of employees."). For example, if CRS genuinely believed that "the Bible forbids interracial marriage," then, according to CRS, § 702 would allow it "to terminate an employee who married someone of a different race." *Id.* (Citations omitted).

Similarly, an employer who denies employment benefits to employees based on their protected characteristics, regardless of its purported religious beliefs, defies the law. *Bostock*, 140 S. Ct. at 1754 ("Judges are not free to overlook plain statutory commands on the strength of

nothing more than suppositions about intentions or guesswork about expectations. . . . An employer who fires an individual merely for being gay or transgender defies the law."). This Court should reject CRS's attempt to erode the rights afforded to employees by Title VII under the guise of religious exercise.

## B.     Maryland Law Does Not Create an Exception That Would Condone CRS's Discrimination.

CRS argues—without citation—that in enacting MFEPA, the General Assembly sought to provide *both* "protection against discrimination due to suspect classifications" *and* "protection of religious exercise." Def.'s Cross-MSJ 21. It maintains that Md. Code Ann., State Gov't § 20-604 exempts religious entities "with respect to the employment of individuals . . . to perform work connected with [all] the activities of the religious entity[.]" *See* Def.'s Cross-MSJ 19. CRS's interpretation is unsupported by law and common sense.

MFEPA's policy goal is clear—it seeks to "prohibit discrimination in employment," *not* to protect religious exercise. Md. Code Ann., State Gov't § 20-602; *see also Equitable Life Assur. Soc. of U.S. v. Comm'n on Human Rel.*, 290 Md. 333, 344 (1981). On the other hand, the religious exemption under § 20-604 is ambiguous, and, accordingly, must be interpreted consistent with Title VII. A statute is ambiguous if "the language is subject to more than one interpretation," and a court must "resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Amaya v. DGS Constr., LLC*, 249 Md. App. 462, 468, *cert. granted*, 474 Md. 719 (2021) (quoting *Barbre v. Pope*, 402 Md. 157, 173 (2007)). In resolving ambiguity, courts may "analyze the statute's relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal" and "consider the consequences resulting from one meaning rather than another." *Blackstone v. Sharma*, 461 Md. 87, 114 (2018) (citations omitted).

Because the statute does not explain what "connected with the activities of the religious entity" means, it is susceptible to two different interpretations. The narrow interpretation that the exemption applies only to employment connected with the *religious activity* of the religious entity is consistent with Title VII, which this Court has already concluded, even after *Bostock*, is "coterminous" with MFEPA and MEPWA. *Doe v. Cath. Relief Servs.*, 529 F. Supp. 3d 440, 448 (D. Md. 2021) (quoting *Schwenke v. Ass'n of Writers & Writing Programs*, 510 F. Supp. 3d 331, 336 (D. Md. 2021)). This interpretation is also consistent with decades of Maryland precedent interpreting MFEPA and MEPWA in harmony with Title VII, MFEPA's legislative history and statutory purpose as a whole, interpretations by the Maryland Human Rights Commission, and the Maryland Declaration of Rights. *See, e.g.,* Pl.'s Cross-MSJ 22–26; Glendora C. Hughes, *The Evolution of Maryland's Commission on Human Relations Law*, 42-AUG Md. B.J. 24, 25 (July/Aug. 2009); *see also Snyder v. Holy Cross Hosp.*, 30 Md. App. 317, 327 (1976) (discussing how Article 36 of the Declaration of Rights prohibits a person's religious beliefs from "invad[ing] the liberties guaranteed by the Fourteenth Amendment").

Conversely, CRS's more expansive view is contrary to relevant authority and would diminish the civil rights of employees, counter to MFEPA and MEPWA's remedial purpose. CRS cites no Maryland decision declining to interpret *substantive* elements of MFEPA and MEPWA in harmony with Title VII. The only time the Maryland Court of Appeals has diverged from interpreting MFEPA consistent with Title VII was to expand—not curtail—employees' rights. *See Haas v. Lockheed Martin Corp.*, 396 Md. 469, 494–95 (2007). *Haas* supports Mr. Doe's position, not CRS's. *Id.* at 482, n.8–9 (2007). There, the Maryland Court of Appeals interpreted undefined terms "occurrence" and "discharge" relating to MFEPA's statute of limitations in conjunction with MFEPA's legislative history to expand, not restrict, the rights of

protected employees. *Id.* at 492–93. Because MFEPA is "remedial in nature," it is "construed liberally in favor of claimants seeking its protection." *Id.* at 494–95. Here, MFEPA should be interpreted consistent with Title VII to avoid limiting employees' rights in favor of religious employers, counter to MFEPA's purpose. *Id.*; *accord Equitable Life*, 290 Md. at 344 (holding MFEPA is clear in its "intent and purpose"—*i.e.*, to protect LGBTQ Marylanders from "the vestiges of discrimination").

CRS also relies on an unpublished Washington state opinion that is readily distinguishable. *See* Def.'s Cross-MSJ 22–23 (citing *Mykland v. CommonSpirit Health*, No. 3:21-cv-05061-RAJ, 2021 WL 4209429 (W.D. Wash. Sept. 16, 2021)). *Mykland* involved a plaintiff's suit against a religious employer for sexual orientation discrimination under Washington's Law Against Discrimination ("WLAD"). *Id.* at *6. The court found, under state law, that sex and sexual orientation were distinct concepts. *Id.* at *8–9 (explaining that historically, Washington state courts do not interpret their act in tandem with Title VII). Conversely here, "sex discrimination claims under MFEPA [and MEPWA] are 'coterminous'" with Title VII, and *Bostock* is instructive. *Doe*, 529 F. Supp. 3d at 448; *accord Mykland*, 2021 WL 4209429, at *9 ("Surely, *Bostock* might affect the interpretation of some state antidiscrimination laws. . . . For example, as they interpret their own state's antidiscrimination laws, state courts may find the Supreme Court's interpretation of Title VII compelling."). Moreover, unlike the plaintiff in *Mykland*, Mr. Doe adequately alleged, and has adduced evidence sufficient to prove, that he was discriminated against both on the basis of sex and sexual orientation. *Compare id.* at *10 (dismissing with leave to amend with facts supporting both) *with, e.g.,* Pl.'s Compl., ECF No. 1, ¶¶ 7, 17, 47, 52–72, 111.

Finally, that MEPWA does not explicitly cover sexual orientation, while MFEPA does, is a distinction without a difference. CRS asks this Court, again, to "read a great deal into the minds of the Maryland General Assembly." *See* Pl's Opp'n to Def.'s Mot. to Dismiss, ECF No. 19, 25. But *Bostock* warns against "speculat[ing] about why a later Congress declined to adopt new legislation," which "offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt." 140 S. Ct. at 1747 (citations omitted). Nothing has happened since this Court's ruling at the Motion to Dismiss stage that would change the analysis. *See Doe*, 529 F. Supp. 3d at 448 (citations omitted). It defies common sense that the General Assembly would amend MEPWA, a remedial statute, to expand protections for gender identity while curtailing the rights of others based on sexual orientation. CRS's interpretation would significantly diminish the rights of employees in favor of religious employers contrary to the undisputed purpose of Maryland's civil rights statutes and should be rejected.

## III. CRS Disregards the Overwhelming Majority of Precedent Concluding that RFRA is Not a Defense to Its Discrimination Against Mr. Doe on the Basis of Sex.

### A. Requiring Mr. Doe to Stand In for the Government is Unsupported by Precedent and Fundamental Principles of Statutory Interpretation.

CRS's argument that RFRA applies to suits between private parties is fundamentally flawed for at least three reasons: (1) the overwhelming majority of courts have held that RFRA does not apply to private parties; (2) there is no interpretation of the law that could force Mr. Doe to be a state actor; and (3) canons of statutory interpretation dictate that RFRA claims can only be asserted when the government is a party.

First, only a single circuit court has concluded that RFRA applies to suits involving only exclusively private parties—a decision that has garnered much criticism. *See Rweyemamu v. Cote*, 520 F.3d 198, 201 & n.2 (2d Cir. 2008) (criticizing the holding of *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006)); *Redhead v. Conf. of Seventh-Day Adventists*, 440 F. Supp. 2d 211, 218–

11

19 (E.D.N.Y. 2006); *Wisc. Province of Soc'y of Jesus v. Cassem*, 373 F. Supp. 3d 378, 390 (D.

Conn. 2019). The Sixth, Seventh, and Ninth Circuits have held that RFRA is inapplicable in

lawsuits where the government is not a party, criticizing the Second Circuit's holding to the

contrary, and the Fifth Circuit affirmed a district court decision doing the same.[3] *See Listecki v.*

*Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 737 (7th Cir. 2015); *Gen. Conf. Corp. of*

*Seventh–Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010); *Tomic v. Cath. Diocese*,

442 F.3d 1036, 1042 (7th Cir. 2006); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826,

834, 837–43 (9th Cir. 1999); *Boggan v. Miss. Conf. of the United Methodist Church*, 222 Fed.

App'x 352 (5th Cir. 2007). A court in this Circuit has reached the same conclusion. *See*

*generally Billard*, 2021 WL 4037431. CRS's mere proclamation in a footnote that *Billard* is

"poorly reasoned," Def.'s Cross-MSJ 38, n.17, does nothing to counter this nationwide

precedent.

     Second, as even CRS recognizes, RFRA places the strict scrutiny burden on the

government. But CRS claims that by unilaterally invoking the RFRA defense, it can force Mr.

Doe to "step in" for the government. Def.'s Cross-MSJ 27. This argument lacks authority and

---

[3] Contrary to CRS's assertions, the issue of whether RFRA could apply in suits involving only private parties was never raised or decided in *E.E.O.C. v. Catholic University of America*, 83 F.3d 455 (D.C. Cir. 1996) or *In re Young*, 141 F.3d 854 (8th Cir. 1998). *But see* Def.'s Cross-MSJ 25. *Catholic University* involved a state actor, *i.e.,* the EEOC, and, at any rate, the plaintiff did not argue that RFRA was inapplicable in suits involving only private parties, instead limiting her arguments to constitutional grounds. *Id.* at 469. *Young* involved whether debtors' tithes could be considered "avoidable transactions" in bankruptcy proceedings. 141 F.3d at 857. Whether RFRA could apply in a suit between private parties was never raised or presented to the court for review. *See generally id.* Moreover, *Young* was decided prior to Congress's amendment to the Bankruptcy Code under the Religious Liberty and Charitable Donation Protection Act of 1998 ("RLCDPA"), which limits a trustee from recovering charitable donations made by a natural person to qualified charitable or religious organizations. *See* 11 U.S.C. §§ 548(a)(2), 548(d)(3), 544(b)(2). Thus, if Congress had intended RFRA to apply as a defense for private parties, RLCDPA would not have been necessary.

would be plainly unfair. *See Sutton*, 192 F.3d at 837–43 (stating that without affirmative

indication otherwise, private entities cannot "be dragooned into [defending] federal law (citation

omitted)). Mr. Doe— ██████████████████████████████████████████

██████—cannot be expected to "step in" for the government in order to have his individual

rights vindicated. Title VII and its analogs, like many other statutes, afford a private right of

action. *E.E.O.C. v. Great Steaks*, Inc., 667 F.3d 510, 516 (4th Cir. 2012) (citations omitted).

RFRA, on the other hand, does not. *See* 42 U.S.C. § 2000bb-1.

 Contrary to CRS's assertion, it would hardly be absurd for Congress "to give religious

employers a leg up only in" cases litigated by the government. Def.'s Cross-MSJ 26. Congress

may very well have provided a defense that gives religious entities protection from the resources

of the government (the entity subject to the commands of the Free Exercise Clause), while not

giving them an advantage over individual employees. CRS's "absurdity argument, then, is that

having a different legal standard—for a suit between private parties where the government could

intervene, and a suit where the government is formally a party—is itself absurd." *Billard*, 2021

WL 4037431, at *20–21 ("The Court concludes that the alleged undesirable policy consequence

of having a different standard for private and government enforcement can hardly be called

absurd." (Citations omitted)).

 Third, basic tenets of statutory interpretation contravene CRS's conclusion that the

government need not be a party to allow CRS to assert RFRA as a defense. CRS acknowledges

that religious entities have myriad exemptions and viable defenses to discrimination, *see, e.g.*,

Def.'s Cross-MSJ 25, but suggests, contrary to the plain language and statutory scheme of

RFRA, that it is entitled to more protections. CRS relies on two phrases in Title VII to contradict

the entire statute. *Compare* 42 U.S.C. § 2000bb(b)(1) and 42 U.S.C. § 2000bb-3(a) (not

explicitly referring to government) *with* 42 U.S.C. § 2000bb(b)(2), § 2000bb-3(c),

§ 2000bb(a)(3)-(5), § 2000bb-1(a)-(c), § 2000bb-2(1), and § 2000bb-4 (limiting application to

"government"); *accord Billard*, 2021 WL 4037431, at *18 (explaining the "whole-act rule"

requires a court to read sections of a statute "in conjunction with the rest of the statute").

Courts presume that lawmakers do not "hide elephants in mouse holes." *Whitman v. Am.
Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Congress should not be assumed to have provided an

enormous expansion of an otherwise narrow law by simply failing to use the limiting language

twice. Although Congress passed RFRA, in part, to reinstitute the *Sherbert-Yoder* test, "[u]nder

the rule to avoid surplusage, this Court cannot disregard the majority of the written statute simply

because the purpose clause indicates a return to a common law test that occasionally had

different results." *Billard*, 2021 WL 4037431, at *19. Congress has not sought to alter this

language. This Court should decline CRS's invitation to legislate where Congress has not.

### B.   Enforcing Title VII is the Least Restrictive Means of Achieving Mr. Doe's Compelling Interest to be Free from Employment Discrimination at CRS.

Assuming RFRA could apply here, CRS's defense still fails as a matter of law because

Title VII is the least restrictive means of satisfying a compelling interest to eradicate

employment discrimination. *See, e.g., E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884

F.3d 560, 590 (6th Cir. 2018). The Supreme Court has declined to hold that RFRA can be used

as a shield "to escape legal sanction" for discrimination in employment decisions. *See Burwell v.
Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014). That same logic applies to CRS's

termination of Mr. Doe's dependent benefits.

1.     **Requiring a Multinational Employer to Provide Equal Compensation Among Similarly-Situated, Non-Ministerial Employees—Regardless of Their Sexual Orientation—is a Compelling Interest.**

"Title VII's purpose of eradicating employment discrimination is a 'compelling government interest.'" *Redhead*, 440 F. Supp. 2d at 220 (citing *Werft v. Desert Southwest Annual Conf. of United Methodist Church*, 377 F.3d 1099, 1102 (9th Cir. 2004)). This is true where, as CRS concedes, exemptions like the ministerial exception do not apply. Def.'s Cross-MSJ 16, n.8. Applying a more focused analysis to determine whether the government has a compelling interest in disallowing CRS's discrimination against its employees does not change the result.

CRS's framing of the compelling interests at issue, *see* Def.'s Cross-MSJ 37–38, "is off-base." *Harris Funeral Homes*, 884 F.3d at 591. CRS attempts to shift the Court's focus from Mr. Doe's compelling interest to its own, *see* Def.'s Cross-MSJ 36, and ignores controlling precedent to the contrary, *Harris Funeral Homes, Inc.*, 884 F.3d at 592 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)). Nor is the inquiry about *how many* other people—or LGBTQ employees as a group—CRS discriminates against because the "focus [of a Title VII and compelling interest analysis] should be on individuals, not groups[.]" *Bostock*, 140 S. Ct. at 1740.

CRS's contention that the Fourth Circuit in *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1398 (4th Cir. 1990), found the Fair Labor Standards Act to support a compelling interest only because it affected "thousands" of employees is misplaced. In *Dole*, the Fourth Circuit held that a church could not be exempt from anti-discrimination laws without also exempting "all other sectarian schools." *Id*. A similar slippery slope is presented here. If CRS—a global organization that provides humanitarian services unrelated to its Catholic faith—is exempted to discriminate on the basis of whom its non-ministerial employees love, the flood gates would

15

open to allow religious employers to discriminate against "hundreds of thousands of employees" by asserting that their religion calls for it. *Cf. Billard*, 2021 WL 4037431 at *10.[4]

At the same time CRS criticizes Mr. Doe's claim for being too individual, it also argues that his statement of interest is too "broadly-formulated." *But see Harris Funeral Homes, Inc.*, 884 F.3d at 591 (outlining the proper way to frame the compelling-interest test). Both these arguments demonstrate why private individuals cannot be expected to step into the government's shoes for purposes of RFRA. Although the government may have more particularized compelling interests to advance, Mr. Doe is not the government and cannot be expected to speak on its behalf. *See Mathis v. Christian Heating & Air Conditioning, Inc.*, 158 F. Supp. 3d 317, 327 (E.D. Pa. 2016) (quoting *Listecki*, 780 F.3d at 736); *accord Hankins*, 441 F.3d at 114 (Sotomayor, J. dissenting) ("Where, as here, the government is not a party, it cannot 'go[ ] forward' with any evidence [of a compelling governmental interest].").

---

[4] CRS disingenuously suggests that Plaintiff is the only person impacted by its discrimination. Def.'s Cross-MSJ 38. CRS knows very well that is incorrect. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### 2.   Title VII is a Neutral Law Containing Tailored Exemptions for Religious Organizations and Is, Therefore, Minimally Restrictive.

It is widely accepted that Title VII is the least restrictive means of advancing the government's compelling interest in eradicating workplace discrimination and no valid, less restrictive alternatives exist. *Dole*, 899 F.2d at 1398. Title VII is a neutral, generally-applicable law that does not provide any secular group with privileges not afforded to religious groups or permit individualized exemptions, nor does it target religious organizations. It is, therefore, the least restrictive means of ensuring equal rights in the workplace. Pl's Cross-MSJ 45–46.

CRS maintains that because it ███████████████████████████ Mr. Doe's requested remedies are "not the least restrictive means of advancing" his right to be free of discrimination. Def.'s Cross-MSJ 38. Setting aside genuine disputes of fact ███████ ████████████, in reality it is not a solution at all. ████████████████████████ ████████████████████████████████████████ Under CRS's approach, denying women, people of color, or individuals with disabilities the right to vote would have no remedy, as they experienced no out-of-pocket expense as a result. This is not the law. *See* Pl's Cross-MSJ 45–47.

CRS's argument about secular exemptions also fails. *See* Def.'s Cross-MSJ 39. CRS seems to argue that because Congress exempted some secular entities—namely overseas employees, the federal government, Native American tribes, and small businesses—from Title VII, its interest in eliminating employment discrimination is not compelling.[5] CRS misconstrues

---

[5] CRS ignores the fact that the federal government is prohibited from discriminating in employment by a different statutory scheme, U.S. Equal Emp. Opp. Comm'n., *Coverage of Federal Government Agencies*, https://www.eeoc.gov/coverage-federal-government-agencies (last visited Mar. 13, 2022). Native American tribes are sovereign governments, and extraterritorial application of U.S. employment law to overseas employees creates complex questions of sovereignty and international conflict of laws.

the Supreme Court's holding in *Fulton v. City of Philadelphia* to justify its position. 141 S. Ct.

1868 (2021).

In *Fulton*, the Supreme Court stated that if a government entity provides a mechanism for

*individualized* exemptions, it must also "extend that [exemption] system to cases of 'religious

hardship.'" *Id.* at 1878 (citations omitted). There, the city contract in question forbade the

rejection of foster parents because of sexual orientation "unless an exception [was] granted by

the Commissioner . . . , in his/her sole discretion." *Id.* at 1878; *see also id.* at 1871 ("A law is not

generally applicable if it invite[s] the government to consider the particular reasons for a

person's conduct by providing a mechanism for individualized exemptions." (Internal quotations

omitted)). The primary concern was that the city had the discretion to grant an individual

exception based on the organization's religious beliefs, but it refused to do so—in other words, a

less restrictive way of enforcing the city's broader interests was available by design, but the city

declined to exercise it. *See id*. at 1878.

That is not the case here. Title VII and the EPA do not provide any federal discretion to

grant exceptions to particular entities, they instead provide tailored exemptions that already

accommodate the religious rights of employers. *See Miss. Coll.*, 626 F.2d at 487 (explaining that

"the impact of Title VII on the free exercise of religious beliefs is minimal" because Title VII's

exemptions ensure that the hiring decisions subject to the law "do not embody religious beliefs

or practices," thus protecting the employer "from any real threat of undermining its religious

purpose"). That a ▮▮▮▮▮▮ position at CRS falls outside of those exemptions does not mean

that the statute is not the least restrictive way to advance the government's compelling interest in

eradicating discrimination in employment. *See, e.g., E.E.O.C. v. Roman Cath. Diocese of*

18

*Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000) ("Though its range of application is limited to

spiritual functions, the ministerial exception to Title VII is robust where it applies.").

CRS argues—counter to Fourth Circuit precedent—that Title VII is not a generally

applicable law. Def.'s Cross-MSJ 39–43; *but see Roman Cath. Diocese*, 213 F.3d at 801

("Where no spiritual function is involved, the First Amendment does not stay *the application of a*

*generally applicable law such as Title VII* to the religious employer unless Congress so

provides.") (Emphasis added)). CRS relies on *Bear Creek Bible Church v. E.E.O.C.*, No. 4:18-

CV-00824-O, 2021 WL 5449038 (N.D. Tex. Nov. 22, 2021)—an unpublished decision from the

Northern District of Texas, currently on appeal—for the proposition that the anti-discrimination

laws in question are not the least restrictive means of advancing the government's compelling

interest "because Title VII and the federal Equal Pay Act contain numerous exceptions for

secular activity." Def.'s Cross-MSJ 39. According to CRS, "[s]ince the government 'extend[s]

these exemptions to nonreligious decisions,' it 'must treat requests for religious exemptions the

same.'" *Id.* at 40 (quoting *Bear Creek*, 2021 WL 549038, at *25).

CRS's argument is based on a fundamental misunderstanding of how exemptions in Title

VII work. Title VII does not treat secular exemptions differently than religious exemptions. *Cf.*

*Mast v. Fillmore Cnty., Minn.*, 141 S. Ct. 2430, 2432 (2021) (Gorsuch, J. concurring) (explaining

that a county law allowing for secular *but not religious exemptions* violated the Religious Land

Use and Institutionalized Persons Act). The doctrine on which CRS relies serves to ferret out

laws that target religious entities or that irrationally create a system of preference for secular

groups. *See Fulton*, 141 S. Ct. at 1877 ("A law also lacks general applicability if it prohibits

religious conduct while permitting secular conduct that undermines the government's asserted

interests in a similar way." (Citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520,

542–46 (1993))). In *Lukumi*, the city passed ordinances that were a "religious gerrymander"
intended to squash Santeria rituals. *See* 508 U.S. at 535–38 (explaining that the government
allowed for exceptions essentially ensuring the Santeria church was the only group affected).
Title VII does nothing of the sort. *See Billard*, 2021 WL 4037431, at *8 (citing cases).

CRS's reliance on *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), is similarly misplaced.
Def's Mem. 42–43. In *Tandon*, the Court found that COVID restrictions treated secular activities
more favorably than at-home religious exercise because the former were allowed "to bring
together more than three households at a time" while the latter were not. 141 S. Ct. at 1297.
Conversely, Title VII exemptions are well reasoned, include specific exemptions for religious
employers, allow religious employers to take advantage of secular exceptions when they meet
the standard (*e.g.*, the small business exception), and are widely accepted as the least restrictive
means of achieving their goals. *See, e.g.*, *Redhead*, 440 F. Supp. 2d at 220; *Miss. Coll.*, 626 F.2d
at 487.

The Fourth Circuit has made clear that Title VII is the least restrictive means of
eradicating discrimination, an interest "of the highest order." *Dole*, 899 F.2d at 1398; *Rayburn*,
772 F.2d at 1169. CRS offers no valid less restrictive alternative because such an alternative does
not exist. *See Harris Funeral Homes, Inc.*, 884 F.3d at 593–97.

3.     **CRS Provides No Credible Evidence that Its Religious Practices Are Substantially Burdened by Providing Dependent Benefits to All Employees.**

Assuming *arguendo* that CRS's RFRA defense could survive, CRS has failed to demonstrate an issue of material fact showing its religious exercise is substantially burdened by complying with Title VII. The First "Amendment embraces two concepts—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940) (footnote omitted); *see also E.E.O.C. v. Tree of Life Christian Schs.*, 751 F. Supp. 700, 710 (S.D. Ohio 1990) ("Statutes are not invalid simply because they may in some way affect the otherwise unfettered operation of a religious institution." (Citing *Thomas v. Rev. Bd*, 450 U.S. 707, 718 (1981))).

CRS argues that "the principle of [formal] cooperation [with evil] was 'developed by Catholic moralists to delineate the circumstances in which a Catholic might legitimately cooperate with someone doing evil in order to achieve a common good.'" Def.'s Cross-MSJ 29. But complying with equal pay laws by providing all employees equal benefits is not a religious exercise as a matter of law.

The *Tree of Life* Court relied on the Fourth Circuit's reasoning in *Dole* to reject a religious educational institution's "claims that its beliefs [were] inseparable from its actions," instead finding that its religion did not excuse its payment of unequal wages to women compared to men. *Tree of Life*, 751 F. Supp. 700 at 712 (rejecting the church's claim, in part, because it did not come from scripture but instead developed "more recently as a manifestation of the belief"). Because the burden was "that the Schools [were] merely prohibited from engaging in certain conduct predicated on a religious belief," the court found that compensating women equally did not substantially burden religious exercise. *Id.* ("Thus, the [EPA] does not require the defendant

21

to act contrary to its beliefs; it simply prohibits it from manifesting its beliefs through a sex-based wage schedule."); *accord Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) ("One can conceive of many activities that are not central or even important to a religion, but nevertheless might be religiously motivated," but "[t]o make religious motivation the critical focus is, in our view, to read out of RFRA the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement.").

Similarly, the Court need not wade into parsing among religious beliefs because CRS's stated burdens, as a matter of law, do not qualify as substantial burdens on its *religious exercise* under RFRA. Mr. Doe is not challenging CRS's beliefs about marriage, nor is he asking CRS to perform same-sex marriages or endorse his marriage. *See, e.g.,* Pl.'s Cross-MSJ 2, 34–37. ███

████████████████████████████████████████████████████

███ Although CRS relies on dicta in *Fulton* to argue that providing dependent health benefits would somehow endorse Mr. Doe's legally-recognized marriage, Def.'s Cross-MSJ 34–36, the Supreme Court reached no such conclusion, instead limiting its holding to whether the mechanism for granting exemptions was generally applicable. 141 S. Ct. at 1879.[6]

CRS relies on the perception of third parties as a claimed burden on its religious practice without pointing to any legal authority in response to the cases Mr. Doe cites rejecting such claims. *See* Def.'s Cross-MSJ 33–34. The fear of an internet troll cannot be a factor in shaping law around religious exercise. *Cf. Kerr v. Enoch Pratt Free Libr. of Balt. City*, 149 F.2d 212, 214

---

[6] CRS's argument that *Navajo Nation* is distinguishable because CRS "sincerely believes" complying with anti-discrimination statutes would cause a decrease in "spiritual fulfillment" is counterfactual and based in "refusing to accept the Indians' religion as worthy of protection under RFRA." 535 F.3d at 1096 (Fletcher, J. dissenting). The Navajo plaintiffs were "sincere in their religious beliefs," but, nonetheless, the court concluded that the diminishment of spiritual fulfillment did not rise to the requisite *substantial burden* on the *exercise* of religion required. *Id.* at 1076. The same result is required here.

(4th Cir. 1945) (finding that "public criticism" and morale were insufficient justifications for declining to hire Black library assistants); *Goza v. Memphis Light, Gas & Water Div.*, 398 F. Supp. 3d 303, 320 (W.D. Tenn. 2019) (finding "[t]he fear of 'going viral'" was not "reasonable justification" to restrict an employee's rights).[7] No reasonable person could view CRS's compliance with a legal obligation prohibiting it from discriminating against LGBTQ employees as ████████████████████████████████████████████████████████

████████████████████████████████

CRS dedicates five pages of its brief to quoting its expert about why anti-discrimination laws substantially burden its religious exercise. *Id.* at 28–32. But CRS offers no legal authority to support how these purported "facts" are relevant to show, as a matter of law, that providing equal benefits to its employees is a substantial burden. Although the Court may not decide what CRS "must practice and believe," *id.* at 2, it is incumbent upon the Court (or a trier of fact) to test the validity of a substantial burden claim, not automatically find one based on CRS's "mere say-so." *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996).

      **4.**     **Because Anti-Discrimination Statutes Are Neutral Laws of General Applicability, Enforcement Does Not Violate the Free Exercise Clause.**

CRS contends that if the Court finds that the statutory exemptions do not apply, and that RFRA is inapplicable, "then enforcement of any of the statutes as against [CRS] would violate the Free Exercise Clause of the First Amendment." Def.'s Cross-MSJ 41. As discussed above, the statutes at issue are neutral and generally applicable and, therefore, do not violate the Free

---

[7] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

Exercise Clause. *See, e.g. Miss. Coll.*, 626 F.2d at 489. Moreover, neither Title VII, EPA, MFEPA nor MEPWA allow discretionary, individualized exemptions. "The Free Exercise Clause of the First Amendment and Article 36 of the Maryland Declaration of Rights ordinarily do not grant to an individual or a religious organization a constitutional right to ignore neutral laws of general applicability even when such laws have an incidental effect of burdening a particular religious activity." *Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 585 (2001) (internal quotation marks omitted). This is particularly true because Article 36 of the Maryland Declaration of Rights expressly provides that "a person may not, under the color of religion, disturb the good order, peace or safety of the State, infringe the laws of morality, or injure others in their natural civil or religious rights." *Snyder*, 30 Md. App. at 327 (quoting Md. Decl. Rts. art. 36). Like Title VII, these corollary Maryland statutes are the least restrictive means for satisfying a compelling government interest and impose no substantial burden on CRS's religious exercise.

5. **The Constitutional Avoidance Doctrine Is Inapplicable.**

The constitutional avoidance doctrine provides that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (citation omitted); *see also Hooper v. California*, 155 U.S. 648, 657 (1895). The doctrine is irrelevant in this case.

Mr. Doe does not propose an interpretation of RFRA that presents constitutional issues. It is CRS that raises a question of state action—attempting to force Mr. Doe to stand in the government's shoes and, thus, broadening the constitutional concept of government action. It is CRS that argues that Title VII is not a neutral, generally-applicable law—attempting to override nearly 55 years of precedent—and demands to use religion as a sword and a shield. To find in

24

CRS's favor would not apply the doctrine of constitutional avoidance; rather, it would create constitutional issues where none exist. This Court should reject those arguments and find, consistent with the overwhelming majority of precedent, that RFRA does not apply in this case.

## OPPOSITION TO CRS'S MOTION FOR SUMMARY JUDGMENT
## AND MOTION TO EXCLUDE THE TESTIMONY OF DR. TODD SALZMAN

### RESPONSE ARGUMENT

CRS ignores that "at the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Indeed, in determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). CRS disregards the controlling legal standard requiring this Court to view *material facts* concerning Mr. Doe's retaliation claim and damages in Mr. Doe's favor.

As discussed below, CRS's cherry-picked facts—most of which are irrelevant—ignore other material facts creating genuine disputes for a jury to resolve. A juror could conclude that CRS's multiple threats to Mr. Doe would have dissuaded a reasonable person from challenging CRS's termination of his dependent benefits. Moreover, the parties' conflicting damages calculations, genuine disputes concerning the purpose of █████████████, Mr. Doe's and his spouse's extensive efforts to secure alternative health insurance and treatment, documented evidence of Mr. Doe's emotional distress, and CRS's continued refusal to provide equal benefits in the face of a perceived risk that it is violating the law entitling Mr. Doe to punitive damages are all issues of fact that should be resolved by the jury. Finally, CRS's attempt to prematurely disqualify Mr. Doe's expert theologian before resolving whether RFRA applies in this case should be rejected.

I.      **Under the Circumstances, a Reasonable Juror Could Conclude that CRS's Threats Constitute Retaliation in Violation of Federal and State Law.**

Title VII prohibits an employer from retaliating against an employee for "oppos[ing] any . . . unlawful employment practice[.]" 42 U.S.C. § 2000e–3(a). Claims of retaliation are actionable so long as "a reasonable employee would have found the challenged action materially adverse," meaning "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (citations omitted). "Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position,'" and a trier of fact should consider "all the circumstances." *Id.* at 71 (quoting *Oncale v. Sundowner Offshore Srvcs., Inc.*, 523 U.S. 75, 81 (1998)).

Viewing all material facts and reasonable inferences in the light most favorable to Mr. Doe, a reasonable juror could easily conclude that CRS's threats were designed to dissuade him from opposing CRS's discrimination. █████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████



CRS carefully avoids the relevant legal standard by attempting to divert the Court's attention to its post-retaliatory conduct. *See* Def.'s Cross-MSJ 44–46. But whether Mr. Doe ███████████████████████████████████████████ is of no moment; the Court must focus its inquiry on "the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *White*, 548 U.S. at 70. The employer's actions

thereafter—either by following through on its threats or not—affect the extent of damages, rather than evidence that no retaliatory threat occurred. In short, "[w]hether a particular [action] is materially adverse depends upon the circumstances of the particular case" and must be "judged from the perspective of a reasonable person *in the plaintiff's position, considering 'all the circumstances.'" Id.* at 71 (citing *Oncale*, 523 U.S. at 81) (emphasis added)). A reasonable juror could find that CRS retaliated against Mr. Doe for challenging its termination of his dependent benefits.

## II.     The Extent of Mr. Doe's Damages Are Classic Issues of Fact that Should Be Resolved by a Jury.

"Under Title VII a prevailing Plaintiff is entitled to 'make whole' relief," including fringe benefits. *Long v. Ringling Bros.-Barnum & Bailey Combined Shows*, 882 F. Supp. 1553, 1560 (D. Md. 1995) (quoting *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 763 (1976)). In addition to injunctive relief, Mr. Doe seeks monetary relief for: (A) compensatory damages arising from the unlawful denial of fringe benefits and reimbursement for expenses and additional medical procedures caused by CRS's unlawful termination of his dependent health benefits; (B) emotional distress; and (C) punitive damages.

### A.     Sufficient Evidence in the Record Creates Genuine Disputes of Material Fact Concerning Mr. Doe's Damages, Mitigation Efforts, and CRS's Entitlement to an Offset.

Mr. Doe has produced evidence supporting his "make whole" monetary damages, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, Mr. Doe's damages are ongoing. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Doe also spent considerable time and effort researching and contacting various insurance agencies to obtain comparable insurance, which a jury may consider in determining damages. ▮▮▮▮▮▮

████████████████████████████████████████ *Accord* 42 U.S.C.

§ 1981a(b)(3); *Long*, 882 F. Supp. at 1560–61.

Unsurprisingly, the parties provide competing damages calculations. *See* Def.'s Cross-

MSJ 46–48. The varying calculations create a genuine dispute best left for the trier of fact. *See*

*Fiallos v. Hamzah Slaughter House, LLC*, No. CV 20-03577-JMC, 2022 WL 111165, at *4 (D.

Md. Jan. 11, 2022) ("Simply put, the parties' diverging views and conflicting evidence . . . has

created a genuine issue of material fact, and its resolution is best reserved for a jury." (Citations

omitted)); *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Srvcs., LLC*, 858 F. Supp.

2d 505, 510 (D. Md. 2012) ("[I]t is ultimately within the province of the trier of fact to make the

final determination of damages . . . .").[8]

### 1.   A Jury Should Resolve Whether ████████████████ Entitles It to an Offset or Whether it Could be Considered a Collateral Source.

CRS claims it is entitled to an offset on the grounds that it ████████████████

████████████████████████████████████████████████████████

████████. But CRS created a genuine dispute of material fact as to the underlying purpose of

████████████████, and whether that increase is a collateral source.

A payment may be from a collateral source even if it is from the tortfeasor, *i.e.*, CRS. As

the Fourth Circuit has clarified, "That a benefit comes from the defendant tortfeasor does not

itself preclude the possibility that it is from a collateral source." *Sloas v. CSZ Transp. Inc.*, 616

---

[8] Although CRS suggests Mr. Doe lacks standing to recover damages incurred by his spouse's prolonged dental care caused by CRS's wrongful termination of benefits, Def.'s Cross-MSJ 48, courts have consistently interpreted Title VII's "make whole" function to broadly afford relief "as the court deems appropriate." *Franks*, 424 U.S. at 763 (citation omitted); *accord E.E.O.C. v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 446 (D. Md. 2020) ("The back pay provision of Title VII was meant to give the courts wide discretion in exercising their equitable powers to fashion the most complete relief possible." (Citation omitted)).

F.3d 380, 389 (4th Cir. 2010) (citations omitted)). "[I]f the tortfeasor does not provide the benefit to the plaintiff as compensation for his or her injury, the benefit is from a collateral source and 'should not be offset against the sum awarded from the tort nor considered in determining that award.'" *Id.* at 390 (quoting *United States v. Price*, 288 F.2d 448, 449 (4th Cir. 1961)); *E.E.O.C. v. Consol Energy, Inc.*, 860 F.3d 131, 149 (4th Cir. 2017) ("But benefits that are not provided as compensation, or to indemnify . . . against liability for the injury, are treated as coming from a collateral source, and are not offset against a damages award." (Citations omitted)); *accord Haughton v. Blackships, Inc.*, 462 F.2d 788, 791 (5th Cir. 1972).

The genuine dispute concerning the purpose of ███████████████ is a creature of CRS's own making. ████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████

CRS wants to reap the benefits of both worlds. It wants to claim that it provided Mr. Doe ████████████████████, but also maintain that it could not provide Mr. Doe with

dependent benefits under the guise of a substantial burden on its religious practices. 

. Thus, CRS cannot prove that its religious

practices have been "substantially burdened." *See, e.g., E.E.O.C. v. Fremont Christian Sch.*, 781

F.2d 1362, 1368 (9th Cir. 1986) ("[I]f those practices do not undermine [CRS's] religious goals

then it is inconceivable that providing health benefits to [Mr. Doe] will have the opposite

effect."). Because CRS has provided inconsistent information on this point, a jury should

determine the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

### 2. A Jury Could Find that Mr. Doe and His Spouse were Reasonably Diligent in Securing Alternative Health Insurance and Treatment.

Title VII requires a plaintiff to be "reasonably diligent" in mitigating his damages. *See*

*Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985). "The defendant bears

the burden of demonstrating that the plaintiff has failed to fulfill the duty to mitigate." *Miller v.*

*AT & T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001). Title VII's mitigation requirement "is not

onerous . . . ." *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998); *see also*

*Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989). Whether a party has mitigated his damages "is

generally a question for the trier of fact." *See E.E.O.C. v. CTI Glob. Sols., Inc.*, 815 F. Supp. 2d

897, 915 (D. Md. 2011) (citations omitted).[9]

Although CRS informed Mr. Doe of its intent to terminate his dependent benefits on

November 10, 2016, it did not formally do so until October 1, 2017. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[9] Given Title VII's duty to mitigate extends only to wages for termination of employment, not fringe benefits, it is unclear how Title VII's duty would apply under the circumstances. *See* 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable.").



Mr. Doe and his spouse would not have had to go through any of these efforts had it not been for CRS's wrongful termination of benefits.

CRS's apparent argument that Mr. Doe did not try hard enough or move quickly enough to find a second replacement insurance is a quintessential issue of fact for a jury. Mr. Doe and his

spouse are two individuals with work, school, and other personal obligations, who have no experience in insurance and relied on the insurance companies they communicated with to find a plan that would suit their needs. A reasonable juror could conclude that, unlike all of CRS's employees in opposite-sex marriages who have never had to undergo such a search, Mr. Doe and his spouse acted diligently under the circumstances.

**B.      Mr. Doe's Emotional Distress Damages Are Well Documented and Create a Genuine Dispute of Material Fact.**

"Under Title VII, compensatory damages are available for, among other things, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *Lima v. MH & WH, LLC*, No. 5:14-CV-896-FL, 2019 WL 2602142, at *19 (E.D.N.C. Mar. 8, 2019) (internal quotation marks omitted) (citing 42 U.S.C. § 1981a(b)(3)). "Courts defer to a jury's award of damages for intangible harms, such as emotional distress, because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001) (citation omitted). "[A] plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 546 (4th Cir. 2003); *accord Tinoco v. Thesis Painting, Inc.*, No. GJH-16-752, 2018 WL 4599677, at *11 (D. Md. Sept. 24, 2018) (denying summary judgment on emotional distress based on the plaintiff's testimony alone).





---

[10] As a "hybrid" witness, ████████ was not subject to Rule 26 expert disclosure. *See Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 501 (D. Md. 1997).



This evidence is more than sufficient to create a triable issue of fact for a jury. *Cf. Bryant*, 333 F.3d at 546; *Tinoco*, 2018 WL 4599677, at *11.

. *See Hydro Inv., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000) ("A proximate cause determination does not require a jury to identify the liable party as the sole cause of harm; it only asks that the identified cause be a substantial factor in bringing about the injury." (Citations omitted)); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003); *accord True v. Pleasant Care, Inc.*, No. 2:97CV20-DE, 2000 WL 33706383, at *3 (E.D.N.C. Jan. 3, 2000) (concluding "that a reasonable jury could find that [plaintiff's] emotional distress was caused by Defendants' actions [despite] other events in [plaintiff's] life [that] may be contributing to-or even causing-the stress and depression he suffers"); *Carter v. Blakely*, No. 1:97CV00982, 1999 WL 1937226, at *7 (M.D.N.C. Sept. 1, 1999) ("[T]here may be more than one proximate cause of a plaintiff's injuries and a plaintiff need not prove a defendant's conduct was the sole proximate cause.").

██████████████████████████████████████████████████████ Taken

to its logical end, CRS's position would bar anyone from recovering emotional distress damages

if they have had any past trauma or saw a therapist for other issues. The law provides otherwise.

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████     Mr. Doe has provided "demonstrable, genuine, and adequate[]" evidence for a

jury to conclude that he is entitled to emotional distress damages. *Price v. City of Charlotte,* 93

F.3d 1241, 1251–52 (4th Cir. 1996).

Without citing any authority, CRS posits that Mr. Doe was required to "retain expert

psychiatrists or psychologists" to establish emotional distress damages. Def.'s Cross-MSJ 50.

Again, this is not the legal standard. *See Bryant*, 333 F.3d at 546; *Tinoco*, 2018 WL 4599677, at

*11. As this Court has explained, while an expert may be necessary in "unusually severe" cases

of emotional distress, a jury "does not need help understanding the ordinary grief, anxiety, anger,

and frustration that any person feels when something bad occurs. Most triers of fact are already

experts in that." *Ricks v. Abbott Lab'ys*, 198 F.R.D. 647, 649 (D. Md. 2001). Although CRS

cannot fathom how an LGBTQ employee might feel when his employer continuously treats him

as a second-class citizen, a jury could.

 **C. CRS's Treatment of Mr. Doe, Refusal to Accept Precedent, and Knowledge of the Viable Ways to Provide Dependent Benefits Create a Genuine Dispute of Material Fact Concerning Punitive Damages.**

"The jury's determination of the amount of punitive damages is . . . an almost

unconstrained judgment or policy choice about the severity of the penalty to be imposed[.]"

*Bryant*, 333 F.3d at 548 (citations omitted). "Whether punitive or compensatory in nature, the

determination of discretionary damages is quintessentially a matter for the trier of fact[.]" *Fiallos*, 2022 WL 111165, at *4, n.2.

"An award of punitive damages is allowed in a Title VII action when the plaintiff demonstrates that the defendant employer engaged in intentional discrimination 'with malice or with reckless indifference to the federally protected rights of' the plaintiff.'" *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir. 2002) (quoting 42 U.S.C. § 1981a(a)(1)); *accord* Md. Code Ann., State Gov't § 20-1013(e)(1). "[T]he Supreme Court [has] rejected the rule that punitive damages are available when the discrimination is particularly egregious or severe." *Anderson*, 281 F.3d at 459 (citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534–35 (1999)). Instead, the Court found that punitive damages are appropriate when a person discriminates "in the face of a perceived risk that [its] actions will violate [the] law[.]" *Kolstad*, 527 U.S. at 536. A reasonable juror could conclude that CRS's termination of Mr. Doe's dependent benefits because he is a man married to a man disregarded "a perceived risk that" doing so would violate the law.

CRS focuses its punitive damages argument on the fact that the Supreme Court had not yet confirmed that Title VII discrimination on the basis of sexual orientation is discrimination on the basis of sex—and that religious freedom defenses would be available under RFRA or the First Amendment. Def.'s Cross-MSJ 54. But a majority of Circuits had concluded *prior to 2017* that RFRA does not apply to suits between private parties. *See McGill*, 617 F.3d at 410 (2010); *Tomic*, 442 F.3d at 1042 (2006); *Listecki*, 780 F.3d at 737 (2015); *Sutton*, 192 F.3d at 834, 837–43 (1999); *Boggan*, 222 Fed. App'x 352 (2007). And, prior to 2017, district courts—including this Court—almost universally agreed. *See Billard*, 2021 WL 4037431, at *17 (citing cases); *Goodman*, 149 F. Supp. 3d at 588–89 (2016).

As to Mr. Doe's state law claims, CRS disregards, *inter alia*, precedent interpreting MFEPA and Title VII coterminously, the remedial purpose of the statutory scheme, and the Maryland Commission on Civil Rights General Counsel's (who has worked there for over 43 years) consistent interpretation that MFEPA's religious exemption only applies to employment "connected with the religious activity of the religious entity." *See* Pl.'s Cross-MSJ 19–26.

Finally, CRS's own conduct reveals its deliberate indifference to Mr. Doe's rights. CRS's threats to Mr. Doe, alone, satisfy the deliberate indifference standard. *See supra,* Resp. Arg. § I. Moreover, █████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ █████████████████████████████████████████. *Compare Anderson*, 281 F.3d at 459–60 ██████ ████████████████████████████████.

Viewing these facts, including CRS's refusal to accept precedent, multiple threats to Mr. Doe, and ███████████████████████████████████████████████████████████████ ████████████, a reasonable jury could find that CRS's refusal to provide dependent benefits to all employees is discrimination in the face of a perceived risk that refusing to do so violates the law. *Kolstad*, 527 U.S. at 536. Summary judgment on punitive damages should be denied.[11]

## III.   CRS's Premature Attempt to Disqualify Mr. Doe's Expert Should Be Rejected.

Dr. Salzman's opinions are not "conspicuously absent" from Mr. Doe's Cross-motion for summary judgment, Def.'s Cross-MSJ 4; his opinions are irrelevant at this stage because CRS's

---

[11] For the same reasons, a reasonable juror could conclude that liquidated damages under 29 U.S.C. § 260 arising from Mr. Doe's EPA claims are appropriate.

religious claims fail as a matter of law.[12] In the unlikely event that CRS's RFRA defense survives, then Dr. Salzman's opinion would assist the jury in determining whether providing equal dependent benefits to Mr. Doe would substantially burden CRS's religious practices.

The Court has "broad latitude" to admit or exclude proffered expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 153 (1999). The court's "'gatekeeping responsibility'" ensures "that scientific, technical or other testimony based on specialized knowledge is both relevant and reliable." *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 565 (D. Md. 2001) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, n.7, 600 (1993)); *accord* Fed. R. Evid. 702.

CRS's argument that Dr. Salzman is "totally unqualified to offer any opinions in this case," Def's Mem. 57, is based on the singular premise that he disagrees with CRS's expert. Again, that is not the law. *See* Fed. R. Evid. 702. Dr. Salzman is more than qualified to testify about Catholic moral teaching. *Compare* Ex. 21, Curriculum Vitae of Dr. Salzman *with Russell*, 2019 WL 6271358 at *2 (finding religious expert qualified to testify concerning substantial burden in RFRA case based on his religious upbringing and service in local Islamic society).[13]

Moreover, the *Russell* Court found that the defendant's expert, who would opine that a prison policy did not substantially burden an inmate's religion, would be helpful to a trier of fact

---

[12] CRS argues that Mr. Doe has waived his right to challenge Dr. Haas's qualifications. Def.'s Cross-MSJ 56, n.21. Because a motion *in limine* regarding Dr. Haas would only be relevant in the unlikely event that CRS's RFRA defense survives, Mr. Doe's decision to allow the Court to resolve the legal issues before burdening the Court with unnecessary motions concerning trial testimony is appropriate. As the notes to Fed. R. Evid. 702 confirm, "The amendment makes no attempt to set forth procedural requirements for exercising the trial court's gatekeeping function over expert testimony." Fed. R. Evid. 702 Advisory Committee's Notes; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 736, 739 (3d Cir. 1994) (discussing *in limine* hearings to disqualify experts).

[13] Indeed, if CRS were to claim that Dr. Salzman were not qualified, then it must concede that its own expert is similarly unqualified.

because "evidence that some members of Russell's religious community hold a contrary interpretation of Islamic dietary requirements may be valuable to a jury in assessing . . . whether Defendants' actions substantially burdened those beliefs." 2019 WL 6271358, at *4 (citations omitted). Thus, contrary to CRS's claim, *see* Def.'s Cross-MSJ 57, Dr. Salzman *can* offer opinions that would help the trier of fact in determining whether providing equal health benefits would impose a substantial burden on CRS's religion. *Id.*; *accord Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314, n.7 (10th Cir. 2010); *Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003); *Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002). "[T]he notion that different members of the same religion can sincerely hold differing beliefs and interpretations is within the ordinary, reasonable juror's competence to comprehend." *Russell*, 2019 WL 6271358, at *4. "[T]he proper remedy for [CRS's] concern is not wholesale exclusion of [Dr. Salzman's] testimony, but rather, use of appropriate safeguards to guide the jury in the proper use of this testimony, including vigorous cross-examination, presentation of contrasting evidence, and a request for limiting instructions." *Id.* (citations omitted).

Should the Court find that CRS's RFRA defense does not fail as a matter of law, then, under the circumstances, "substantial burden" is a question of fact for the jury. *See e.g., Navajo Nation*, 535 F.3d at 1068; *Brandon v. Kinter*, 938 F.3d 21, 36, n.11 (2d Cir. 2019); *Bikur Cholim, Inc.*, 664 F. Supp. 2d at 291. Mr. Doe is entitled to offer evidence to rebut CRS's claim,

█████████████████████████████████████████████████. *Accord Bauer*, 84 F.3d at 1559. CRS cannot unilaterally assert that its religion would be substantially burdened to strip this Court of jurisdiction and deny Mr. Doe relief from the "vestiges of discrimination" that laws like Title VII, EPA, MFEPA, and MEWPA were designed "to eradicate[.]" *Equitable Life*, 290 Md. at 344; *accord Redhead*, 440 F. Supp. 2d at 220.

## **CONCLUSION**

For the foregoing reasons, Plaintiff John Doe respectfully requests that this Court grant his Motion for Partial Summary Judgment and deny CRS's Motion for Summary Judgment in its entirety.

Respectfully submitted,

/s/ Eve L. Hill
Eve L. Hill, Esq. (Bar No. 19938)
Anthony J. May, Esq. (Bar No. 20301)
Lauren DiMartino (Bar No. 22046)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com
amay@browngold.com
ldimartino@browngold.com

Shannon C. Leary, Esq. (Bar No. 18396)
James A. Hill, Esq. (Bar No. 21718)
GILBERT EMPLOYMENT LAW, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, Maryland 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Sleary-efile@gelawyer.com
Jhill-efile@gelawyer.com

*Counsel for Plaintiff*