IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN DOE, | * | |
|     Plaintiff | * | |
| v. | * | No. CCB-20-1815 |
| CATHOLIC RELIEF SERVICES, | * | |
|     Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR PARTIAL RECONSIDERATION OF
## SUMMARY JUDGMENT RULING

Defendant Catholic Relief Services—United States Conference of Catholic Bishops respectfully moves pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 105.10 for reconsideration of the Court's summary judgment decision as to Count III of Plaintiff's Complaint for Declaratory, Injunctive, and Monetary Relief [ECF No. 1], and further moves for correction of a clerical error in the Court's August 3, 2022 Order [ECF No. 62] regarding Count X.[1]

Courts in this District exercise their discretion to reconsider prior rulings where, *inter alia*, courts have "misunderstood a party's position," *HSK v. UnumProvident Corp.*, No. CCB-12-3373, 2013 WL 5945668, at *1 (D. Md. Nov. 5, 2013), or have identified "clear error causing manifest injustice," *Koon ex rel. Glay v. Prince George's County*, No. DKC 17-2799, 2019 WL 2642834, at *1 (D. Md. June 27, 2019) (citation omitted). While Catholic Relief

---

[1] In its August 3, 2022 Memorandum [ECF No. 61], the Court held that "CRS's motion for summary judgment on Doe's retaliation claim [Count X] will be granted," as the "alleged threat" is "insufficiently adverse." Memorandum at 22. However, the accompanying Order [ECF No. 62] states in paragraph 2 that "CRS's motion for summary judgment on Count X and as to damages is **Denied**, except as to the claim for punitive damages, for which CRS's motion for summary judgment is **Granted**." Catholic Relief Services presumes that the inconsistency between the Memorandum and the Order is the product of a mere clerical error and requests that the Court modify the Order to clarify that Catholic Relief Services' motion for summary judgment on Count X (retaliation) is granted.

798543

Services respectfully disagrees with the Court's summary judgment rulings as to Plaintiff's federal discrimination claims, Catholic Relief Services does not seek reconsideration of those rulings at this time. Instead, Catholic Relief Services seeks narrow reconsideration as to Count III, because it appears from the Court's August 3, 2022 Memorandum [ECF No. 61] that the Court may have overlooked the relationship between Counts I and II (discrimination under the Maryland Fair Employment Practices Act) and Count III (discrimination under the Maryland Equal Pay for Equal Work Act).

Catholic Relief Services has argued, with respect to Counts I, II, and III (Plaintiff's surviving state law claims), that the Maryland General Assembly (unlike Congress) enacted a deliberate statutory scheme in which "sex," "sexual orientation," and "gender identity" are discrete categories. Thus, while *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), teaches that sexual orientation and gender identity discrimination claims are cognizable as discrimination because of "sex" under Title VII of the Civil Rights Act of 1964, the Maryland statutory language and scheme is different such that those categories are separate, and subject to separate treatment, under Maryland law. The *Bostock* Court anticipated this possibility when it discounted the fears of employers that the Court's decision would "sweep beyond Title VII to other federal or state laws that prohibit sex discrimination." *Id.* at 1753; *see id.* ("[N]one of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today."); *Vroegh v. Iowa Dep't of Corrs.*, 972 N.W.2d 686, 702-03 (Iowa 2022) ("Vroegh in effect argues that 'gender identity' is subsumed within the meaning of 'sex.' We disagree with the *Bostock* majority on this issue and thus reject Vroegh's argument advancing it. . . . We generally don't read statutes to imply that the legislature wasted its time and ink by including redundant provisions.").

2

The Court recognized Catholic Relief Services' argument as to Plaintiff's claims arising under the Maryland Fair Employment Practices Act (Counts I and II) and deferred its rulings as to that statute, directing the parties to "propose a joint question of law treating the proper interpretation of MFEPA's religious exemption either in line with, or departing from, Title VII." Memorandum at 18.  The Court denied without prejudice the parties' cross-motions for summary judgment as to both Count I (Plaintiff's sexual orientation discrimination claim under the Maryland Fair Employment Practices Act, which, as Catholic Relief Services has argued, should be rejected under the religious employer exemption) and Count II (Plaintiff's sex discrimination claim under the Maryland Fair Employment Practices Act, the viability of which turns on the meaning of "sex" under Maryland law).

The Court rightly noted that interpretation of the Maryland Fair Employment Practices Act "involves important issues of state public policy around negotiating the tension between religious freedom and antidiscrimination law." *Id.*  This Motion for Reconsideration argues that the same issues, and the same solicitude, apply with respect to interpretation of the Maryland Equal Pay for Equal Work Act.  The Court interpreted the Equal Pay for Equal Work Act (in granting summary judgment to Plaintiff on Count III) without the benefit of guidance from Maryland's Court of Appeals.  While the Court observed that the Equal Pay for Equal Work Act "contains no religious exception to speak of," *id.* at 20, the statute is conspicuously silent as to "sexual orientation," although it expressly proscribes pay disparities on the bases of "sex" and "gender identity."  The Court's interpretation of the Equal Pay for Equal Work Act (under Count III) as implicitly proscribing sexual orientation discrimination is directly related to the issue being certified to the Court of Appeals under Counts I and II.  The legislative history materials, which Catholic Relief Services provided in support of its summary judgment cross-motion,

798543

suggest that the silence in the Equal Pay for Equal Work Act regarding sexual orientation is no accident. Rather, the Maryland General Assembly deliberately chose, in this statute that does not exempt religious employers, to address discrimination on the bases of certain categories (sex and gender identity) but not others (sexual orientation or, for that matter, race, national origin, and other immutable characteristics).

If the Court of Appeals of Maryland confirms, in response to the forthcoming certified question, that Catholic Relief Services' understanding of "sex" and "sexual orientation" under Maryland law is correct, and that a claim sounding in sexual orientation discrimination is distinct from a claim sounding in sex discrimination under the Maryland Fair Employment Practices Act, this Court's summary judgment ruling as to Count III would be cast into serious doubt.

Since the Court of Appeals will already be tasked with deciding the scope of sex discrimination under the Maryland Fair Employment Practices Act, the most efficient approach would be for this Court to request a similar ruling from the Court of Appeals as to the Maryland Equal Pay for Equal Work Act. After all, if Catholic Relief Services is right, the Maryland General Assembly has enacted a deliberate legislative framework—not just one statute—through which the legislature has endeavored to balance sometimes competing state interests of religious and other civil liberties. Catholic Relief Services respectfully submits that this Court should, as it has done in Counts I and II, defer its ruling on Count III pending authoritative guidance from the Court of Appeals on this important interpretive issue under Maryland's anti-discrimination statutes.

## **Procedural History**

Plaintiff, an employee of Catholic Relief Services, brought this action in June 2020, after Catholic Relief Services terminated his spousal health benefits that had been granted in error.

798543

Plaintiff is ineligible for those benefits because he is married to a man.  Catholic Relief Services' sincerely held religious beliefs preclude it from providing spousal health benefits to the same-sex partners of employees, as provision of those benefits both would constitute formal cooperation with wrongdoing and could generate "scandal" that might lead others into sin.  *See generally* Statement of Dr. John M. Haas on the Immorality of Providing Spousal Benefits to Same-Sex Couples [ECF No. 45-11].  Plaintiff, however, alleged that the termination of his spousal health benefits amounted to unlawful employment discrimination under the Maryland Fair Employment Practices Act (Counts I–II), the Maryland Equal Pay for Equal Work Act (Count III), Title VII (Count VIII), and the federal Equal Pay Act (Count IX), and further alleged retaliation in violation of those statutes (Count X).  Plaintiff also challenged the termination of his spousal health benefits on other state law grounds (Counts IV–VII) that the Court has since dismissed, *see Doe v. Catholic Relief Servs.*, 529 F. Supp. 3d 440 (D. Md. 2021).

On January 31, 2022, Plaintiff moved for partial summary judgment as to liability only on Counts I–III and VIII–IX (the state and federal discrimination claims, respectively).  *See* Mem. in Supp. of Pl. John Doe's Mot. for Partial Summ. J. [ECF No. 41].  Catholic Relief Services cross-moved for summary judgment on all counts that had survived the Court's prior ruling.  *See* Def. Catholic Relief Services' Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J., Cross-Mot. for Summ. J., & Mot. to Exclude Expert Opinion Testimony by Dr. Todd A. Salzman [ECF No. 45].  In its August 3, 2022 Memorandum and Order, the Court granted summary judgment to Plaintiff on Counts III, VIII, and IX, and granted summary judgment to Catholic Relief Services on Count X.  The Court denied the parties' cross-motions without prejudice as to Counts I and II and directed the parties to meet and confer and propose a joint question

concerning the scope of the Maryland Fair Employment Practices Act for certification to the Court of Appeals.

## Standard of Review

"The appropriate Rule under which to file motions for reconsideration of an interlocutory order," such as the Court's summary judgment Order, "is Rule 54(b)" of the Federal Rules of Civil Procedure. *Koon*, 2019 WL 2642834, at *1. Rule 54(b) provides that, except where a court directs entry of a final judgment as to one or more, but fewer than all, claims or parties, "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

"Compared to motions to reconsider *final* judgments . . . Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphases in original). The Fourth Circuit has recognized that a "court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Id.* (alteration in original) (citations omitted). Likewise, in conducting a Rule 54(b) analysis, "District courts within the Fourth Circuit have considered such factors as whether the court has misunderstood a party's position or whether a party has put forth new evidence or law." *HSK*, 2013 WL 5945668, at *1.

Courts in this Circuit have not hesitated to reconsider rulings that they find to have been predicated on a misunderstanding of the parties' positions or applicable law. For instance, in

6
798543


*Nature-Tech, LLC v. Hartford Fire Insurance Co.*, No. DKC 19-2053, 2022 WL 2065875 (D. Md. June 8, 2022), Judge Chasanow of this Court granted a motion for reconsideration of summary judgment as to one defendant's counterclaim where Judge Chasanow concluded that she had "misunderstood the scope of [the plaintiff's] motion for summary judgment." *Id.* at *2. Judge Chasanow observed that the counterclaim incorporated two discrete theories of breach of contract, yet the plaintiff had only sought summary judgment as to one of those theories, and summary judgment as to the entire counterclaim accordingly was premature. *See id.* at *2-3; *see also, e.g.*, *Aguilar v. Back*, No. 1:19cv1634 (AJT/MSN), 2022 WL 821163, at *1 (E.D. Va. Mar. 17, 2022) (reconsideration granted; "the Court misapprehended the claims [plaintiff] seeks to pursue in this lawsuit"); *United States v. Langley*, No. 3:11CR212, 2019 WL 6337416, at *3 (E.D. Va. Nov. 26, 2019) (reconsideration granted; the court "clearly erred" when it found that charged offense was predicated on conspiracy rather than substantive crime), *appeal dismissed*, 853 F. App'x 900 (4th Cir. 2021); *Felts v. Volvo Grp. N. Am., LLC*, No. 7:17-cv-00297, 2018 WL 3954157, at *2 (W.D. Va. Aug. 17, 2018) (reconsideration granted; "the court erred in concluding that [plaintiff] had insufficient evidence for a jury to conclude that [defendant's] reasons for terminating him were pretextual"); *Limelight Networks, Inc. v. XO Commc'ns, LLC*, No. 3:15-cv-720-JAG, 2018 WL 1460703, at *1 (E.D. Va. Mar. 23, 2018) (reconsideration granted; the court "misunderstood the parties' prior arguments about the proper construction of the . . . Patent"); *Ashmore v. Wilson*, No. 8:15-cv-02368-JMC, 2017 WL 455388, at 3 (D.S.C. Feb. 2, 2017) (reconsideration granted; discovery order would have "result[ed] in a manifest injustice to Defendant because it precludes him from developing evidence to defend against [certain] allegations").

798543

**Argument**

The Court denied without prejudice the parties' cross-motions for summary judgment on Counts I and II and indicated that it will certify a question to the Court of Appeals concerning the scope of the Maryland Fair Employment Practices Act as it relates to these counts. In Count I, Plaintiff alleges that the termination of his spousal health benefits constitutes sexual orientation discrimination in violation of the Maryland Fair Employment Practices Act. Catholic Relief Services argued in its summary judgment papers that the religious employer exemption located in Md. Code Ann., State Gov't § 20-604 precludes Plaintiff's claim in Count I, since Catholic Relief Services indisputably is a "religious corporation," and since Plaintiff is employed to "perform work connected with the activities of the religious entity." Plaintiff disagreed with Catholic Relief Services' interpretation as to the scope of the religious employer exemption, arguing that the exemption did not apply. In light of the Court's decision to certify a question about the "proper interpretation of MFEPA's religious exemption" to the Court of Appeals, *id.* at 18, that Court will determine whether the religious employer exemption means what it says and forecloses Plaintiff's discrimination claim against Catholic Relief Services under the Maryland Fair Employment Practices Act.

However, as this Court recognized, the parties' dispute about the scope of the Maryland Fair Employment Practices Act extends beyond the meaning of the religious employer exemption. Plaintiff alleges in Count II that the termination of his spousal health benefits amounted to sex discrimination and argues there is no express religious exemption from sex discrimination claims. Catholic Relief Services has challenged Plaintiff's claim in Count II primarily because of the discrete treatment of "sex" and "sexual orientation" under Maryland law. As Catholic Relief Services has argued, both at the pleading stage and in its summary

judgment papers, "state laws' separate mentions of 'sex' and 'sexual orientation' indicate that they are actually separate and non-overlapping categories unaffected by *Bostock*'s reading of Title VII discrimination against gay and lesbian employees as discrimination based on sex." Memorandum at 17-18.

This Court understood that any question certified to the Court of Appeals must address not only the religious employer exemption but also the separate treatment of "sex" and "sexual orientation" under Maryland law.[2] That, presumably, is why the Court declined to certify Plaintiff's proposed question, *see* Memorandum at 18 n.9, and also why the Court denied without prejudice the parties' summary judgment cross-motions as to both Count I *and* Count II. This Court understood that the Court of Appeals must grapple with the Maryland General Assembly's legislative line-drawing with respect to "important issues of state public policy around negotiating the tension between religious freedom and antidiscrimination law." Memorandum at 18.

Yet the same textual and policy considerations that inform the interpretation of the Maryland Fair Employment Practices Act also inform the interpretation of the Maryland Equal Pay for Equal Work Act. As the Court recognized in ruling on Catholic Relief Services' motion to dismiss, "[t]he argument goes that Maryland's express inclusion of sexual orientation and gender identity as protected classes under MFEPA ***and of gender identity as a protected class under MEPWA*** demonstrates that the Maryland General Assembly believed that discrimination

---

[2] After all, if Plaintiff is wrong about the scope of the religious employer exemption but correct about the meaning of "sex" under state law—if, that is, Plaintiff's claims equally arise under Count I (sexual orientation discrimination) and Count II (sex discrimination)—then the religious employer exemption is essentially dead letter, because every plaintiff employed by a religious organization would simply style his or her complaint as sounding in sex discrimination. This is the tension the Court of Appeals will have to consider in reviewing the certified questions in this matter.

798543

on those bases was not covered by the existing prohibitions in each law of sex discrimination." *Doe*, 529 F. Supp. 3d at 447 (emphasis added).

It seems unlikely that the Court of Appeals, if given the opportunity, would conclude that the meaning of "sex" differs between the Maryland Fair Employment Practices Act and the Maryland Equal Pay for Equal Work Act. Both laws are part of a framework of protection for employees: for that matter, while "sex" is not explicitly defined in either statute, the statutes share a common definition of "gender identity." *Compare* Md. Code Ann., State Gov't § 20-101(e), *with* Md. Code Ann., Lab. & Empl. § 3-301(c). "When the statute to be interpreted is part of a statutory scheme, it must be interpreted in that context. . . . Thus, statutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or 'any portion, meaningless, surplusage, superfluous or nugatory.'" *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302-03 (2001) (citation omitted).

In the current procedural posture, though, the Court has indicated it will certify a question as to the meaning of sex discrimination under the Maryland Fair Employment Practices Act even as the Court relies on its own interpretation of the closely related question of the meaning of sex discrimination in the companion Maryland Equal Pay for Equal Work Act. If the Court of Appeals adopts Catholic Relief Services' position under the Maryland Fair Employment Practices Act, then under the law of the case, "sex" would have different meanings across the two statutes. While that result would appear incongruous, and while the Court conceivably could vacate its prior summary judgment ruling as to Count III at that time, the Court might find that further guidance from the Court of Appeals would be helpful to clarify whether there is some basis under Maryland law to treat the scope of sex discrimination differently across the two statutes. Efficiency also counsels in favor of certifying the related state statutory question under

10

the Maryland Equal Pay for Equal Work Act to the Court of Appeals now rather than doing so after receiving that court's interpretation under the Maryland Fair Employment Practices Act. All stakeholders in this process would benefit from one definitive ruling from the Court of Appeals, now, that would allow the Court to resolve harmoniously the liability issues under Plaintiff's remaining state law claims.[3]

The Court therefore should certify a question as to the scope of sex discrimination under both statutes—the Fair Employment Practices Act and the Equal Pay for Equal Work Act—and then apply the Court of Appeals's authoritative guidance in disposing of Counts I–III after the certified question is answered. By allowing the Court of Appeals to decide whether sexual orientation discrimination is conterminous with sex discrimination under these state statutes, the Court will "remove[] the need for judicial guesswork," *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 705 (2010) (citation omitted), and will appropriately defer to the judgment of Maryland's highest court on an important question of Maryland law. *See also id.* ("The purpose of the Maryland Uniform Certification of Questions Act is 'to promote the *widest possible use* of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law in a foreign forum.'" (emphasis and alterations in original)).

This case cannot proceed to final judgment until the Court of Appeals decides how to apply the Maryland Fair Employment Practices Act in a post-*Bostock* world. So there is no downside to certification, now, of a corresponding question under the Maryland Equal Pay for Equal Work Act. That approach—referring both questions to the Court of Appeals simultaneously—would avoid a scenario in which the Court's treatment of "sex" differs across

---

[3] That definitive ruling from the Court of Appeals will also aid the Fourth Circuit in the likely event that one or both parties present issues on appeal (including issues concerning the scope and interpretation of the state statutes) following entry of an appealable order in this matter.

11

798543

two related statutes, or in which the Court finds that it must certify a second question to the Court of Appeals, delaying the resolution of these proceedings.  Catholic Relief Services respectfully requests that the summary judgment granted in favor of Plaintiff on Count III be vacated, and that both parties' motions for summary judgment on Count III be denied without prejudice pending certification to the Court of Appeals of Maryland.

Finally, Catholic Relief Services respectfully requests that the Court amend its prior Order [ECF No. 62] to confirm that the Court has granted summary judgment to Catholic Relief Services on Count X.  The Court's August 3, 2022 Memorandum [ECF No. 61] stated that "CRS's motion for summary judgment on Doe's retaliation claim [Count X] will be granted," as the "alleged threat" is "insufficiently adverse."  Memorandum at 22.  However, the accompanying Order states in paragraph 2 that "CRS's motion for summary judgment on Count X and as to damages is **Denied**, except as to the claim for punitive damages, for which CRS's motion for summary judgment is **Granted**."  The inconsistency between the Memorandum and the Order likely is the result of a clerical error.  However, to prevent any confusion as the case proceeds, the Court should modify the Order to clarify that Catholic Relief Services' motion for summary judgment on Count X is granted in its entirety.

## Conclusion

The Court should grant Catholic Relief Services' Motion for Partial Reconsideration, and the parties should confer and propose for certification questions of law that address both the scope of the religious employer exemption in the Maryland Fair Employment Practices Act and the relationship between "sex" and "sexual orientation" discrimination in Maryland's employment statutes.

Respectfully Submitted,

**GALLAGHER EVELIUS & JONES LLP**

　　　*/s/ Joe Dugan*　　　
David W. Kinkopf, Fed. Bar No. 23366
dkinkopf@gejlaw.com
Joe Dugan, Fed. Bar No. 19637
jdugan@gejlaw.com
Collin J. Wojciechowski, Fed. Bar No. 21112
cwojciechowski@gejlaw.com
Emily A. Levy, Fed. Bar No. 21403
elevy@gejlaw.com
218 N. Charles Street
Baltimore, Maryland 21201
Tel: (410) 727-7702
Fax: (410) 468-2786

*Attorneys for Defendant Catholic Relief Services*

Date:  August 15, 2022