IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN DOE,

    *Plaintiff*,

v.

CATHOLIC RELIEF SERVICES,

    *Defendant*.

Case No. 1:20-cv-01815-JRR

## MEMORANDUM OPINION AND ORDER

The court has before it Plaintiff's Motion for Partial Reconsideration of Order on Consent Motion to Maintain Anonymity at Trial. (ECF No. 105; the "Motion.") Plaintiff, with Defendant's consent, previously moved the court to permit him to "maintain his anonymity at trial proceedings," and order that the bench trial "be a closed proceeding to maintain [his] anonymity." (ECF No. 98.) The court ruled that Plaintiff is permitted to proceed pseudonymously at trial, but closure of the courtroom is "relief broader than necessary to guard Plaintiff's privacy interest described in the Motion." (ECF No. 100.) Plaintiff now asks the court to reconsider its denial of Plaintiff's request for a trial sealed from public access.

### I.  Background

The court incorporates the extensive background detailed in its memorandum opinion at ECF No. 61. In brief, Plaintiff, a gay, cisgender male, has sued Defendant, his former employer,[1] after it terminated his spousal health insurance benefits because he is married to a man. (ECF No. 1 ¶¶ 7, 17, 66; ECF No. 61.) Plaintiff requested leave to proceed pseudonymously in this action, which the court granted, concluding that "under both the common law and First Amendment

---

[1] Plaintiff is no longer employed with Defendant. (ECF No. 107 at p. 2; ECF No. 109 at p. 1.)

standards, any public interest in [Plaintiff's] identity is heavily outweighed by [Plaintiff's] privacy interest." (ECF No. 11.)  For this same reason, this court has ordered that Plaintiff may continue to proceed by pseudonym at trial.

## II.   Legal Standard

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  FED. R. CIV. P. 54(b).  "[A] court should revise an interlocutory order only to account for '(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 179 (D. Md. 2022), *appeal dismissed,* No. 22-1642, 2023 WL 3002738 (4th Cir. Apr. 19, 2023) (quoting *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018)).  "[A]llowing litigants a 'second bite at the apple' via a motion to reconsider is disfavored." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *Neal v. United States*, 599 F. Supp. 3d 270, 310 (D. Md. 2022) (same).

## III.   Analysis

Plaintiff now moves this court to reconsider its order at ECF No. 100 pursuant to Rule 54(b), asserting the court's order is premised on, or amounts to, a "clear error causing manifest injustice." (ECF No. 105 at p. 2.)  Plaintiff contends that anonymity is insufficient to protect his privacy interest because third-party actors, specifically "extremist organizations" who monitor the activities of Defendant's employees, "well may" attend trial and "use any piece of information revealed through testimony . . . for widely disseminating the true identity of" Plaintiff and his spouse.  *Id.* at 2–7.  Plaintiff supports his request with citation to statistics demonstrating an

increase in violent crime against members of the LGBTQ+[2] community. *Id.* at p. 3. Defendant contends it "takes no position" in response to the Motion, but notes that circumstances have changed since its filing—namely, (i) the parties have since reached agreement as to damages, thus removing the prospect of certain testimony on sensitive matters of concern to Plaintiff; and (ii) Plaintiff has resigned from his employment with Defendant, thus resolving the concern that he may be a target of, or subject of interest to, "extremist organizations."[3] (ECF No. 107 at p. 1–2.)

The court begins its analysis with the fundamental importance of open trials:

> "Secrecy is profoundly inimical to this demonstrative purpose of the trial process. Open trials assure the public that procedural rights are respected, and that justice is afforded equally. Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law. Public access is essential, therefore, if trial adjudication is to achieve the objective of maintaining public confidence in the administration of justice."

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring). "[W]hether in the context of products liability claims, securities litigation, employment matters, or consumer fraud cases, the public and press enjoy a presumptive right of access to civil proceedings and documents filed therein . . . ." *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014). Specifically:

> The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny. *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 575 (4th Cir. 2004). "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *In re United States for an Order*

---

[2] LGBTQ+ is an initialism meaning lesbian, gay, bisexual, transgender, queer (or questioning), as well as other persons who do not identify as heterosexual or cisgender.

[3] Defendant also states that "another mainstream religious entity . . . has an interest in the legal issues involved in this action and . . . plans to observe the trial." (ECF No. 107 at p. 2.) Given the vague nature of this assertion, and that no entity (or person) filed an objection to Plaintiff's Motion (or the Consent Motion at ECF No. 98), the court gives this no weight.

>*Pursuant to 18 U.S.C. Section 2703,* 707 F.3d 283, 290 (4th Cir. 2013) (quoting *Va. Dep't of State Police,* 386 F.3d at 575) (internal quotation marks omitted). The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." *Rushford,* 846 F.2d at 253. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," *Stone,* 855 F.2d at 180, and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest," *In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir. 1986) (quoting *Press–Enter. Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (internal quotation marks omitted)).

*Id.* at 265–66. Relevant here, the Fourth Circuit has recognized that "the First Amendment right of access extends to civil trials." *ACLU v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011) (citing cases).

When the First Amendment right of access is at issue, the court may order sealing (or closure) of judicial proceedings only "if (1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." *G.W. Aru, LLC v. W. R. Grace & Co.-Conn.*, No. CV JKB-22-2636, 2023 WL 5512226, at *1 (D. Md. Aug. 25, 2023) (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 377 (4th Cir. 2021).

Even crediting Plaintiff's assertion that closure of the courtroom would serve his compelling privacy interest, the court is not persuaded that the second and third prerequisites are satisfied here. *See id.* With respect to the second prerequisite, Plaintiff has not demonstrated, or even truly asserted, a "substantial probability" that his privacy interest would be harmed in the absence of a closed trial. He does not demonstrate or allege an actual threat (express or implied) to the privacy interests on which his entitlement to proceed by pseudonym are founded, and proffers no facts to demonstrate that his protected privacy interests are at great risk based on his mere appearance in court despite his use of a pseudonym. Instead, Plaintiff proposes the court

4

exclude the public access to the courtroom based on hypothetical possibilities: people connected with the "extremist organizations" "well may" attend the proceedings in an attempt to identify Plaintiff, based on the fact that the organizations covered the Supreme Court of Maryland's decision regarding a matter at issue in this case. (ECF No. 105 at p. 2, 4.)

At the core of Plaintiff's concern is the possibility that such individuals may attend trial, take detailed notes of Plaintiff's (and/or his spouse's) appearance, and publish such details in their public reporting on the case. (ECF No. 105 at p. 4.) The possibility that "people connected" with reporting outlets that Plaintiff asserts "actively monitor[] this lawsuit" may attend trial (and may attend in order to identify Plaintiff) does not demonstrate a "substantial probability" that his privacy interest will be harmed. Even were such an individual to attend trial, Plaintiff's concern that his particular privacy interest will suffer harm because such an individual may be able to "decipher" (*id.*) his true identity simply does not raise adequate grounds to overcome the strong presumption that trials shall not be secreted from public access.[4]

Individuals in the LGBTQ+ community face hate, ridicule, violence and all manner of loathsome, discriminatory, and, at times, criminal treatment. Plaintiff, however, has not met the applicable legal standard to entitle him to a private trial. Plaintiff's argument builds inference upon inference: third-party actors may attend the trial; they may then note extensive detail of Plaintiff's physical appearance; motivated by their goal to critique Defendant's employees, they then may publish that information despite Plaintiff no longer being Defendant's employee; others may see such information and be able to identify Plaintiff; and they may then pursue violence

---

[4] The court notes that Plaintiff does not assert that any identified "extremist organization" has directed or threatened violence or vitriol toward him or his family; rather, he asserts their focus is on public attacks of Defendant and its employees—neither of which Plaintiff is. (ECF No. 105 at p. 2.) Further, while not a consideration of the court in its evaluation the Motion, the absence of third party objection to the Consent Motion (and Motion) may suggest that Plaintiff's identity is not of interest to the reporting outlets he describes, and is rather at odds with Plaintiff's assertion that extremist organizations "closely monitor" this case.

against Plaintiff. Such a course of events is certainly not impossible, but it does not demonstrate a "substantially probable" risk or outcome.

With respect to the third prerequisite, Plaintiff makes no mention of less restrictive alternatives to closing the courtroom (with the exception of proposing a "gag order" on members of the public who attend trial, which the court addresses below). The court granted Plaintiff's request to proceed anonymously at trial; and any evidence offered at trial that contains Plaintiff's (or his spouse's) personally identifying information will be appropriately redacted to protect it from the public record. Further, Plaintiff is entitled, but not required, to sit at the trial table, and has made no request to seal the courtroom during his testimony. To be clear – the court makes no comment or finding that it would approve such a request; rather, the court notes that Plaintiff has failed to consider or propose something short of a private trial.

Plaintiff's failure to consider less restrictive alternatives is particularly profound when considering cases he cites in support of the Motion – cases that pertain to consideration of options less restrictive than closure of an entire trial. (ECF No. 105 at p. 3–7.) First, much of Plaintiff's cited caselaw involves analysis of permitting pseudonymous litigation. That is not at issue here; the court has already permitted Plaintiff to proceed by pseudonym, including at trial. Further, relief in the form of a pseudonym is materially distinct from relief in the form of a closed trial. Allowing a party to proceed by pseudonym does not deprive the public from knowledge of the case or many of its facts; instead, it deprives the public only of identifying information of a party. *Cf. Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (conducting separate analysis of, *inter alia*, whether the district court erred in allowing a party to litigate under a pseudonym and whether it erred in allowing the entire docket sheet to remain sealed during the pendency of litigation, and noting that "[b]y sealing the entire docket sheet during the pendency of the litigation, as the district

6

court permitted in this case, courts effectively shut out the public and the press from exercising their constitutional and common-law right of access to civil proceedings"). Pseudonymous litigation deprives the public of the name of a litigant; a closed or sealed trial deprives the public of the entire trial proceeding – all the testimony, all the evidence, all the arguments.

Similarly, Plaintiff also relies upon cases in which a court ordered closure of the courtroom in a limited fashion, unlike Plaintiff seeks here. Plaintiff cites *Nolan v. Money*, 534 F. App'x 373, 380 (6th Cir. 2013). In *Nolan*, the Sixth Circuit opined on whether a criminal defendant's Sixth Amendment right to a public trial was violated when the court conducted examination of a victim witness in the court's chambers. 534 F. App'x at 375. It noted, and Plaintiff asserts, that "courts have held that the need to protect a witness from intimidation justifies closure of the courtroom." *Id.* at 380. *Nolan* is not persuasive here. The Sixth Circuit's analysis did not concern (or even address) the First Amendment and, importantly, Plaintiff here has sought far broader relief than that at issue in *Nolan*—a sealed trial as opposed to testimony of a particular witness outside of the public eye. For the same reasons, Plaintiff's reliance on *United States v. Ramic*, No. 1:21-CR-00013, 2024 WL 2274529 (W.D. Ky. May 20, 2024), is not compelling. The court's decision there similarly concerned the Sixth, not First, Amendment, and involved closure of the courtroom during specific witness testimony—a far more narrowly-tailored request than Plaintiff seeks here. *Id.* at *9–12.

In sum, Plaintiff has not demonstrated a "substantial probability" of harm in the absence of closure or that alternatives to closure are inadequate to protect his privacy interest. In view of the foregoing, the court is not persuaded that closing the courtroom for the duration of trial is justified, and it discerns no clear error causing manifest injustice in its previous order.

The court now turns to Plaintiff's alternative request that it "issue a gag order" that trial

attendees (members of the public) shall not "disclos[e] any personally identifiable information" about Plaintiff or his spouse. (ECF No. 105 at p. 6.) Plaintiff cites no legal authority that the court has authority to take such uniformly broad action against members of the public, *e.g.*, non-parties and non-witnesses. Plaintiff offers no argument that, or discussion of how, such action comports with the First Amendment, or how such an order would be enforceable. Moreover, as set forth above, Plaintiff's personally identifiable information will be shielded from the public record,[5] and the public is not permitted to take photos or videos in the courtroom.

The court appreciates that Plaintiff guards his privacy closely. Unfettered access to our judicial system to pursue action to remedy alleged wrongs comes at a cost at odds with Plaintiff's wishes in this instance. Accordingly, it is this 26th day of September, 2024:

**ORDERED** that the Motion shall be, and is hereby, **DENIED**.

/s/
Julie R. Rubin
United States District Judge

---

[5] *See also* FED. R. CIV. P. 5(2) regarding privacy protections for filings made with the court.